In the

# United States Court of Appeals
### For the Seventh Circuit

---

Nos. 04-1865 & 04-3068

IMRAN SAJID HUSSAIN,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,[1]

*Respondent.*

---

On Petitions for Review of an Order
of the Board of Immigration Appeals.
No. A 78 945 960

---

ARGUED FEBRUARY 7, 2005—DECIDED SEPTEMBER 20, 2005

---

Before ROVNER, WILLIAMS, and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Imran Hussain, a native of
Pakistan, arrived in the United States in August 2001.
Shortly thereafter, the Immigration and Naturalization
Service initiated removal proceedings. Hussain then
petitioned for asylum and other relief, alleging a fear of
persecution on account of his religion, membership in a
particular social group, and political opinion. After find-
ing Hussain's testimony not credible and unsupported

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we
have substituted the current Attorney General of the United
States, Alberto R. Gonzales, as the named respondent.

by corroborating documentation, the immigration judge denied Hussain's application. The Board of Immigration Appeals affirmed the immigration judge's decision, and Hussain petitioned this court for review. We find that Hussain's due process rights were not violated when the immigration judge denied his motion for an extension of time to submit supplemental documentation because he has not shown he was prejudiced by the immigration judge's deadline for document submission. In addition, we conclude that the denial of his application for asylum and withholding of removal is supported by substantial evidence. Therefore, we deny the petition for review.

## I. BACKGROUND

Imran Hussain entered the United States in August 2001 without being admitted or paroled, in violation of 8 U.S.C. § 1182(a)(6)(A)(i). Shortly thereafter, Hussain was charged with removability pursuant to 8 U.S.C. § 1227(a)(1). Hussain conceded he was removable but filed a petition for asylum and withholding of removal.

At a preliminary hearing on June 21, 2002, the immigration judge scheduled the merits hearing for December 16, 2002. The immigration judge informed Hussain's counsel that he required any supplements to the record to be filed sixty days before the hearing date, i.e., by October 16, 2002. On October 18, 2002, Hussain's counsel moved for an extension of time to file supplemental materials, contending that he was waiting to receive documents from Pakistan. The immigration judge denied this request.

At his asylum hearing, Hussain testified that he grew up in Lahore, a city in the Punjab province of Pakistan. He stated that after completing the tenth grade, he attended college (according to Hussain, the equivalent of grades eleven and twelve in the United States) in Lahore, where he became active in the Shia Muslim religion. There,

he began his involvement with the Tehrik-E-Jafria of Pakistan (TJP), a Shia group. He testified that he, his father and grandfather were all active members of the TJP.

Hussain testified that although he was a Shia Muslim, the majority of Muslims in Pakistan are Sunni Muslim. In 1993, while sitting with Shia friends at his college, Hussain recounted that Sunni Muslims confronted him about preaching his religion at the college, warning him to stop preaching or threatening that it would cost him his life. After learning about this incident, his parents sent him to Karachi, Pakistan for two months, where he learned more about his religion.

When he returned to Lahore in 1994, he began preaching quietly. In the spring of that year, Hussain said he participated in a rally to commemorate Pakistani Shia martyrs. He explained that every year, clashes between Shia and Sunni Muslims occur at the event. That year, he said, he fell, causing his head to bleed, and he was taken to a police station where he spent one night before his parents came to release him. Although he did not speak with any Sunnis at the rally, he said that he recognized several of them and Sunnis later told him they had observed his presence at the rally.

Hussain testified that Sunnis confronted him again in the fall of 1995 when he organized a seminar to share his religious beliefs with fellow students at Punjab University. He stated that organizers had distributed flyers before the event listing him as the speaker, and about forty or fifty people were present on the day of the event. Before he could speak, however, he testified that at least thirty other Sunni students surrounded the hall where he was to speak. According to Hussain, they also sealed the parking lot and university entrances so no one could leave. He testified that after three or four hours, the Sunni students fired a shot in the air and allowed the participants to leave. Hussain

testified that he reported the incident to the police and his principal, but they took no action.

The following fall, Hussain testified that six people approached him in his university cafeteria, said they needed to talk to him, displayed weapons, and forced Hussain and two friends to go with them to the university's hostel. There, he testified that the captors tied Hussain and his friends to chairs and taped their mouths, and a captor drilled one friend's knee with an electrical drill. Hussain stated that another assailant then pulled a gun and pointed it at Hussain's head, then at his knee. Right then, he said, help arrived. According to Hussain, one of the captors yelled, "Police have raided the campus," and the captors left. Although Hussain had testified that police could not normally enter the school premises, he explained that others in the cafeteria may have seen the incident and notified the principal, and the principal may have then used his power to bring the police into the school. He also explained that the eight to ten police officers entered the building in civilian clothes.

Hussain also testified that he was an active member of the TJP from 1997 to 2000. He stated that during those years, he gave speeches before crowds of fifty to one hundred people. In December 2000, he testified that Punjab University invited him to give a speech at a seminar organized by Shia students and printed flyers and invitations with his name. While speaking, Hussain testified that Sunni members of the Sipah-E-Sihaba of Pakistan (SSP) whom Hussain recognized from earlier rallies entered the conference hall with guns and began tearing down the flyers. Hussain testified that he started to escape but while doing so, was shot in both legs. He still managed to leave the campus and to flag down a car before passing out. He testified that he woke up in a hospital, reported the incident to police, and the police did nothing. He stated that after the incident, TJP members warned him to be careful.

Hussain also testified that after this incident, his parents visited him in the hospital and told him they had learned from their neighbors that a van full of people had approached Hussain's house, shouting and shooting guns. Afraid to return home, and advised by the TJP to leave town, Hussain testified that he headed from the hospital to Karachi, a trip that takes approximately twenty-five hours by car. A few months later, Hussain testified that while on a motorcycle with a friend, they noticed a van following them. He stated that the van cornered he and his friend in an alley, and eight or nine people opened the van doors armed with machine guns. Hussain stated that he recognized the van occupants as the same persons who had confronted him at his university and at rallies. Hussain testified that he and his friend barely managed to escape. After this incident, he testified that the TJP arranged for him to leave the country by paying a smuggler $18,000.

Hussain testified that if he returned to Pakistan, he believed he would be tortured and killed. He testified that his uncle, a prominent Shia Muslim, had been abducted and beaten by members of a militant Sunni group. When asked whether he could move to a different part of Pakistan, Hussain answered that he could not do so because his enemies had found him when he had tried before to get away from Lahore.

The immigration judge, finding Hussain's testimony not credible and unsupported by corroborating documentation, denied his request for relief. In addition, the immigration judge stated that even if he accepted Hussain's testimony as true, he had not established eligibility for asylum or withholding of removal. The Board of Immigration Appeals affirmed the immigration judge's decision, and Hussain now petitions this court for review.

## II.  ANALYSIS

Hussain raises three issues on appeal. First, he contends that his due process rights were violated when the immigration judge denied his motion to submit additional documentation in support of his claim. Next, he challenges the immigration judge's adverse credibility finding, contending it was not supported by the evidence. Finally, Hussain maintains that he should receive relief under the Convention Against Torture. Where, as here, the Board of Immigration Appeals affirms an immigration judge's order without a separate opinion, the decision of the immigration judge constitutes the "final agency determination" for purposes of our review. *Rashiah v. Ashcroft*, 388 F.3d 1126, 1131 (7th Cir. 2004).

### A.  Supplemental Documentation

Hussain first contends he was denied due process when the immigration judge denied his motion for an extension of time to file supplemental materials that he was awaiting from Pakistan. The local operating instructions of the Chicago Immigration Court state that additional documentation must be submitted no later than ten days before the hearing. The immigration judge, however, imposed a sixty day before hearing cutoff, and Hussain contends the immigration judge's imposition of a more stringent deadline than that set by the local operating instructions violated his right to due process. We review alleged denials of due process de novo. *Hasanaj v. Ashcroft*, 385 F.3d 780, 783 (7th Cir. 2004).

It is well-settled that aliens subject to removal proceedings are entitled to due process. *See, e.g.*, *Kuschchak v. Ashcroft,* 366 F.3d 597, 602 (7th Cir. 2004). In this context, "'due process requires notice reasonably calculated to provide actual notice of the proceedings and a meaningful opportunity to be heard.'" *Id.* (quoting *Nazarova v. I.N.S.,*

171 F.3d 478, 482 (7th Cir. 1999)). A "meaningful opportunity to be heard" includes a "reasonable opportunity" to present evidence on the alien's own behalf. *Kerciku v. I.N.S.*, 314 F.3d 913, 915 (7th Cir. 2003); *Ambati v. Reno*, 233 F.3d 1054, 1062 (7th Cir. 2000); *see* 8 U.S.C. § 1229a(b)(4)(B) (alien entitled to "a reasonable opportunity . . . to present evidence on the alien's own behalf"). In order to succeed on a due process claim, however, "[a] petitioner . . . must do more than show that one of these tenets had been violated." *Kuschchak*, 366 F.3d at 602. Instead, "a petitioner must produce 'concrete evidence' indicating that the due process violation 'had the potential for affecting' the outcome of the hearing." *Ambati*, 233 F.3d at 1061 (quoting *Kuciemba v. I.N.S.*, 92 F.3d 496, 501 (7th Cir. 1996)). In other words, to prevail on a due process claim, an alien must show prejudice. *Capric v. Ashcroft*, 355 F.3d 1075, 1088 (7th Cir. 2004).

As the government notes, the regulations provide that an immigration judge may set his own deadlines for the submission of evidence. 8 C.F.R. § 1003.31(c) (2004) states: "The Immigration Judge may set and extend time limits for the filing of applications and related documents and responses thereto, if any. If an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived." Although an immigration judge could conceivably impose a deadline so unreasonable that it would not afford the alien a "reasonable opportunity" to present evidence, this is not such a case.

Here, in a hearing on June 21, 2002, the immigration judge set the matter for a merits hearing on December 16, 2002. He asked Hussain's counsel if he planned to supplement the record, and Hussain's counsel responded affirmatively. The immigration judge then stated, "I will require any supplements 60 days before the hearing date, counsel, by October 16th, year 2002." Hussain's counsel agreed. The

immigration judge thus clearly informed Hussain of the deadline for submission of additional documents, and Hussain does not contend otherwise.

On October 18, 2002, two days after the deadline, Hussain's counsel filed a motion for an extension of time to file supplemental materials. The motion stated that he was "attempting to receive documentation from various sources in Pakistan supportive of his claim, however, these documents have been slow in coming." The immigration judge denied Hussain's motion, stating that he had informed Hussain's counsel on June 21, 2002 that the call up date for supplemental documents was October 16, 2002.

By this time, over nine months had elapsed since Hussain filed his asylum application. Although we recognize that procuring supporting documentation from overseas can often be difficult, if not impossible, for an asylum applicant, *see, e.g.*, *Korniejew v. Ashcroft*, 371 F.3d 377, 386-87 (7th Cir. 2004), Hussain was not denied due process in this case when the immigration judge denied his motion for an extension of time to file supplemental documentation from Pakistan. On appeal, Hussain explained that the documents he hoped to submit from Pakistan included documents establishing his membership in the TJP. At his hearing, Hussain testified that he was in regular contact with his parents and that his father was a member of the TJP. He has offered no explanation, however, for why his parents were unable to send him an affidavit attesting to his membership in the TJP in the nine months after his application for asylum. *See Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (finding exclusion of letter that arrived after filing deadline did not violate alien's right to due process when over eight months had elapsed since alien filed application for asylum). In addition, as the immigration judge later pointed out, Hussain testified that a friend in Pakistan had enough time to send him $6000 to allow him to bond out of detention, yet Hussain offered no

explanation for why his friend had the time to send him money but did not have the time to send supporting documents.

Furthermore, there is no evidence that the earlier deadline prejudiced Hussain, as there is no indication that he obtained any documents from Pakistan by the time the immigration judge issued his ruling denying Hussain asylum, let alone by ten days before the hearing. Although Hussain did file documents after the October 18, 2002 deadline for submission of documents, none were from Pakistan. The record reflects that on November 8, 2002, he filed articles describing conditions in Pakistan and a copy of a grant of asylum from Canadian authorities to another Pakistani Shia Muslim. (A.R. 287-306.) He did not file any documents from Pakistan corroborating his story that day. In addition, Hussain later filed documentation with the Board of Immigration Appeals in support of his motion for reconsideration. On July 12, 2004, in support of this motion, Hussain filed an expert opinion report from Dr. Paul White from the University of Sydney, Australia Centre for Peace and Conflict Studies. Again, however, he did not file any documents from Pakistan. Therefore, Hussain has not shown he was prejudiced by the immigration judge's imposition of an earlier deadline than that set by the local immigration court, and his due process claim fails.

B.   Adverse Credibility Determination

Hussain also appeals the denial of his applications for asylum and withholding of removal. The immigration judge rejected Hussain's applications for asylum and withholding of removal because he did not believe Hussain's story and Hussain had failed to provide corroborating evidence in support of his application. Hussain challenges the immigration judge's adverse credibility finding, arguing that it was not supported by the evidence.

To be eligible for asylum, an applicant must establish that he is a "refugee" within the meaning of the Immigration and Nationality Act. 8 U.S.C. § 1158(b)(1); *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005). The Act defines a "refugee" as one who is unable or unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The petitioner carries the burden of establishing eligibility for asylum. *Jamal-Daoud*, 403 F.3d at 922; 8 C.F.R. § 208.13(a). Our review of an immigration judge's decision to deny asylum is limited to determining whether the decision is supported by substantial evidence. *Huang v. Gonzales*, 403 F.3d 945, 948 (7th Cir. 2005).

An immigration judge's adverse credibility determination receives "highly deferential" review so long as it is well-reasoned. *Nigussie v. Ashcroft*, 383 F.3d 531, 534 (7th Cir. 2004) (citing *Pop v. I.N.S.*, 270 F.3d 527, 530-31 (7th Cir. 2001)). "[W]e have emphasized that passing expressions of disbelief do not adequately substitute for an adverse credibility finding." *Soumahoro v. Gonzales*, 415 F.3d 732, 736 (7th Cir. 2005) (citing *Iao v. Gonzales,* 400 F.3d 530, 534 (7th Cir. 2005); *Diallo v. Ashcroft,* 381 F.3d 687, 698 (7th Cir. 2004)). That is, an adverse credibility determination must be supported by "specific, cogent reasons" that bear "a legitimate nexus to the finding." *Id.* Even so, we will reverse an immigration judge's credibility findings only in "extraordinary circumstances." *Hysi v. Gonzales*, 411 F.3d 847, 852 (7th Cir. 2005); *Tolosa v. Ashcroft*, 384 F.3d 906, 909 (7th Cir. 2004).

This case does not present extraordinary circumstances that would require us to overturn the immigration judge's adverse credibility finding. Hussain claims that he was threatened, intimidated, and injured as a result of his religious or political beliefs. The immigration judge did not

believe Hussain's story, and the inconsistencies and implausibilities to which the immigration judge pointed went to the heart of Hussain's claim. *See Capric*, 355 F.3d at 1090. In addition, the immigration judge gave "specific, cogent" reasons for why he found the account not plausible.

For example, the immigration judge pointed to Hussain's testimony that on one occasion, police officers, dressed in civilian clothes because they were not authorized to be on the university campus, rescued Hussain from where he was being held. Hussain had recounted that after one of the assailants yelled, "police have raided the campus," eight or nine officers in civilian clothes rescued Hussain from his captors. When asked how an assailant would know that the persons were police officers when they were dressed in civilian clothes, the immigration judge noted, Hussain could offer no explanation.

Another story the immigration judge did not believe concerned Hussain's testimony of an incident after Hussain moved from Lahore, Pakistan to Karachi, Pakistan, a journey Hussain estimated took approximately 25 hours by car. Hussain testified that while riding on a motorcycle with a friend in Karachi, he and his friend saw a van following them. Hussain recounted that the van cornered the motorcycle in a dead end alley, and the doors of the van opened. Eight or nine individuals exited the van, armed with machine guns, and Hussain testified that he recognized these persons as the same people from his hometown in Lahore who had opposed him at the university and in rallies. According to Hussain's testimony, he and his friend barely managed to escape. The immigration judge found it highly unlikely that the same persons who had attended school with Hussain 25 hours away by car would arrive in a new city, identify Hussain by name, chase him in a van, open the van doors while armed with machine guns, look at Hussain while they had him cornered him in a dead alley, and yet allow Hussain to get away.

The immigration judge also questioned Hussain's testimony that Sunni sympathizers had shot him with bullets in both legs. After he was shot, Hussain recounted, he managed to escape the university campus and stop a car before passing out in the car. The immigration judge stated he did not believe that Hussain could have traveled the distance he did if he had truly been shot in both legs. The judge also noted that Hussain showed both of his legs to the court. The judge stated that one leg, above the knee, had a minor scar, and on the other leg "there was barely any mark other than a small shadow." Hussain did not present any hospital documents or offer a medical opinion as to the scars' cause.

The immigration judge also found questionable Hussain's testimony concerning his involvement with the TJP. Hussain testified that he was an active TJP member and that the TJP paid a smuggler $18,000 to enable Hussain to leave Pakistan. However, the immigration judge noted, when the government attorney pointed to documents identifying the TJP as an extremist group involved in killings, he attempted to separate himself from the group. The immigration judge believed Hussain either lied about his membership in the group or that he was an active member of an extremist organization.

In addition to finding Hussain's accounts implausible, the immigration judge also pointed to Hussain's failure to provide corroborating documentation for any matter central to his claim when he denied Hussain's request for relief. An applicant's testimony, if credible, "may be sufficient to sustain [the] burden of proof without corroboration." 8 C.F.R. § 208.13(a); *see Gontcharova v. Ashcroft*, 384 F.3d 873, 876 (7th Cir. 2004). "[W]hen the IJ does not believe the applicant or does not know what to believe," however, "the applicant's failure to corroborate his testimony can be fatal." *Nigussie*, 383 F.3d at 537 (citation omitted).

In order to aid our review, we have stated that an immigration judge's explanation of why it deemed corroborating

evidence necessary should include, at least: "(1) an explicit credibility finding; (2) an explanation of why it is reasonable to expect additional corroboration; and (3) an account of why the petitioner's explanation for not producing that corroboration is inadequate." *Gontcharova*, 384 F.3d at 877. The immigration judge's explanation here was sufficient.

As we discussed, the immigration judge explicitly found Hussain not credible. In addition, he explained why corroborating documentation was reasonable and why Hussain's explanation for its absence was unreasonable. For example, Hussain did not submit any documents identifying him or any relative as a member of the TJP, even though he was in regular contact with his parents and he testified his father was a member of the organization. The immigration judge also noted that Hussain had testified that flyers containing his name were printed in advance of speeches during which he was threatened, but he did not submit copies of the documents or any affidavits from friends who had witnessed the events. Furthermore, although Hussain testified he reported several incidents to the police, he did not submit copies of police reports or any documents relating to such reports. Similarly, Hussain testified that he went to the hospital after he was shot and stayed there for five days, but he did not present any documents from the hospital or any affidavits from his parents, whom he testified picked him up at the hospital and had knowledge of many of the incidents.

When asked why he had not submitted any documentation, Hussain testified that he was still attempting to get the documents together. The immigration judge did not find this explanation sufficient. The judge pointed to Hussain's testimony that he was in contact with his parents often, yet he had failed to obtain any documents from his parents. In addition, the immigration judge noted Hussain's testimony that a friend in Pakistan had sent him $6000 several months earlier to allow Hussain to bond out. The

immigration judge did not find satisfactory Hussain's explanation that the friend had been too busy to send a letter stating that Hussain belonged to the TJP organization, as he had found the time to wire Hussain money.

As we stated earlier, we acknowledge the difficulty asylum applicants often have in obtaining corroborating documentation, and we can understand that documents from foreign hospitals or police can be hard, if not impossible, to obtain. As the immigration judge noted, however, Hussain was in regular contact with family and friends, yet none sent either affidavits or the supporting documentation that he claimed existed. We conclude that the immigration judge's adverse credibility determination deserves our deference.

Hussain's testimony was necessary to sustain his burden of establishing either past persecution in Pakistan or a well-founded fear of future persecution on account of his religion, political opinions, or membership in a particular social group. Because he did not believe Hussain's story and Hussain failed to submit corroborating documentation, the immigration judge found Hussain not credible. As a result, the immigration judge found that Hussain had not established past persecution or a well-founded fear of future persecution. We cannot say that this decision was unsupported by substantial evidence.

Finally, because Hussain fails to meet the more lenient burden of proof for asylum, he cannot establish that he is entitled to withholding of removal under 8 U.S.C. § 1231(b)(3) or that he is eligible for protection under the Convention Against Torture. *See Hysi*, 411 F.3d at 853-54; *Ahmed v. Ashcroft*, 348 F.3d 611, 619 (7th Cir. 2003).

## III.  CONCLUSION

For the foregoing reasons, Hussain's petition for review is DENIED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*