# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 08-1788 & 08-1789

EDGAR JUAREZ and ESMA JUAREZ-MEONO,

*Petitioners,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petitions for Review of Orders of the
Board of Immigration Appeals.
Nos. A75-475-617 & A70-059-846

ARGUED JANUARY 12, 2009—DECIDED MARCH 12, 2010

Before EASTERBROOK, *Chief Judge,* and WILLIAMS and
SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Esma Juarez-Meono and her son
Edgar Juarez are Guatemalan natives who entered this
country illegally in 1989 and 1997, respectively. Juarez-
Meono requested asylum shortly after arriving, but
Juarez did not. When the Department of Homeland
Security ("DHS") initiated removal proceedings against

them in 2004, Juarez-Meono and Juarez told the immigration court they intended to file applications seeking various forms of relief from removal. Both filed their applications nearly 14 months late, however, and they never provided their biometrics—fingerprints and other identifying biographical information—despite being admonished by the immigration judge ("IJ") to "pester" their attorney about completing this necessary part of the application process. Juarez-Meono and Juarez later moved for a continuance so they could have more time to comply with this requirement. The IJ denied the motion and concluded that their untimely applications and failure to provide the required biometrics meant they had abandoned their applications for relief. The IJ entered orders of removal, and the Board of Immigration Appeals ("BIA") affirmed.

Juarez-Meono and Juarez petitioned this court for review. The Attorney General initially argued that our jurisdiction was barred by 8 U.S.C. § 1252(a)(2)(B)(ii), but that argument has been eliminated by the Supreme Court's recent decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010). Even so, the petitioners cannot prevail. They were given ample time to file their applications for relief and provide biometrics, and did not have good cause for their delay; the IJ did not abuse his discretion in denying their motion for a continuance. Nor was it an abuse of discretion to reject their requests for relief because of their failure to comply with these application prerequisites. We therefore deny the petitions for review.

## I. Background

Juarez-Meono and Juarez, her 27-year-old son, are natives of Guatemala. They entered the United States illegally nearly a decade apart; Juarez-Meono arrived in 1989 and asked for asylum in 1990, while Juarez arrived in 1997. Immigration officials ignored Juarez-Meono's request for asylum for more than a decade. The DHS initiated removal proceedings against the pair in 2004.

At a hearing in immigration court on July 26, 2005, both Juarez-Meono and Juarez conceded the removal charges but told the IJ they planned to seek various forms of relief from removal. Juarez-Meono said she intended to apply for cancellation of removal in addition to pursuing her 1990 asylum application; Juarez said he planned to apply for asylum and withholding of removal.[1] When the IJ asked the petitioners' attorney how much time he wanted to file the applications for relief, the attorney requested 60 days. The IJ agreed, ordered the applications to be filed by September 26, 2005, and set November 13, 2006, as the date for the next hearing. The IJ told both petitioners they needed to provide fingerprints and biographical information before that hearing in order to be eligible for relief. *See* 8 U.S.C. § 1158(b)(1)

---

[1] Juarez was originally included on his mother's application as a derivative beneficiary, but this was a mistake. Because Juarez was not in the United States when his mother's 1990 application was filed, he cannot be a derivative beneficiary. *See* 8 C.F.R. §§ 208.3(a), 1208.3(a). Thus, he was required to file his own application.

(directing the Attorney General to establish procedures for asylum applications); *id.* § 1158(d)(1) (permitting the Attorney General to promulgate regulations requiring applicants to submit, among other things, fingerprints and a photograph); *id.* § 1158(d)(5)(A)(i) (requiring the Attorney General to check the identity of all asylum applicants against relevant Justice and State Department databases to determine whether there are grounds for inadmissibility or ineligibility); 8 C.F.R. § 1003.47 (requiring applicants to submit fingerprints and biographical information before asylum application will be considered).

The record indicates that both Juarez-Meono and Juarez were well aware of the relevant requirements. The DHS had served notice on both petitioners explaining the biometrics requirements, and the IJ addressed the petitioners personally and instructed them both to "pester your attorney" to get fingerprints submitted because they would not be eligible for relief unless they complied. Each petitioner acknowledged receiving these instructions. The petitioners' attorney also acknowledged his familiarity with the biometrics procedures and said he understood the process could take some time.

The petitioners did not file their applications by the September 26, 2005 deadline. Nor did they comply with the biometrics requirements. Less than a week before the November 13, 2006 hearing, they filed motions asking for a continuance. Counsel advised the court that the applications had been mailed but he had not yet received a receipt confirming they had been filed, nor had he obtained an appointment for the petitioners to provide

fingerprints. Counsel also claimed that he had "been unable to devote adequate time" to preparing the petitioners' cases. The IJ denied the continuance motions on the ground that no good cause had been shown for the lengthy delay. On November 8, 2006, Juarez's application for asylum arrived at the immigration court. Juarez-Meono's application arrived on the date of the petitioners' hearing—November 13, 2006—but *after* the hearing concluded. Both applications were almost 14 months late.

At the November 13 hearing, the DHS took the position that the petitioners had abandoned their claims for relief because they failed to submit fingerprints or timely file their applications for relief and had not shown good cause for the delay. *See* 8 C.F.R. § 1208.10 (application may be deemed abandoned for failure to comply with biometrics requirements unless good cause is shown); *id.* § 1003.31(c) (application deemed waived if not timely filed). The petitioners' attorney maintained, without corroboration, that he had mailed the applications and tried to make a fingerprint appointment for his clients in September 2006 and attributed the delay to a "failure of communication" between his office and the petitioners. He again asked for a continuance, but conceded that the petitioners lacked good cause. He argued that they should not be penalized for missing the court's deadlines when the immigration authorities had not acted on Juarez-Meono's asylum application for more than a decade.

The IJ agreed with the DHS that there was no good cause for a continuance and no valid explanation for either the untimely applications or the failure to comply

with the biometrics requirements. The IJ held that the petitioners' failure to submit their fingerprints, coupled with the nearly 14-month delay in filing their applications, meant that they had abandoned their applications for relief.[2] The IJ entered orders of removal and denied Juarez's request for voluntary departure based on arrests for drunk driving and two other crimes. Juarez-Meono and Juarez appealed to the BIA, but their attorney never filed a brief in support of their appeals. The DHS asked for summary affirmance, and in separate orders entered on March 4 and 10, 2008, the BIA affirmed.

In Juarez-Meono's case the BIA summarily affirmed the IJ's decision deeming her applications abandoned based on her failure to submit fingerprints. The BIA also noted that she had not filed a brief on appeal, meaning the only argument before the appellate tribunal was the summary statement in her notice of appeal. In Juarez's case the BIA explained that under 8 C.F.R. § 1003.31(c), a failure to comply with the deadline for filing an application for immigration relief may be deemed a waiver if no good cause is shown. Because Juarez gave no reason for his failure to timely file his asylum and withholding-of-

---

[2] Because each petitioner's application was slightly different, so too is the phrasing of the IJ's orders. As to Juarez-Meono the IJ ordered that her applications for asylum, cancellation of removal, withholding of removal, and relief under the Convention Against Torture were "deemed abandoned." As to Juarez the IJ ordered that his applications for asylum and withholding of removal were denied for "failure to prosecute timely."

removal applications, and also had not submitted finger-
prints, the BIA dismissed the appeal. Both Juarez-Meono
and Juarez petitioned this court for review, and we con-
solidated their petitions.

## II. Discussion

When, as in Juarez-Meono's case, the BIA summarily
affirms the IJ's decision, we review the IJ's decision.[3]
*Tabaku v. Gonzales*, 425 F.3d 417, 421 (7th Cir. 2005). When,
as in Juarez's case, the BIA agrees with the IJ's decision
but supplements the IJ's decision with its own explana-
tion for rejecting the appeal, we review the IJ's decision
as supplemented by the BIA's reasoning. *Niam v. Ashcroft*,
354 F.3d 652, 655-66 (7th Cir. 2004).

---

[3] The Attorney General argues that we lack jurisdiction to
review any of the claims raised in Juarez-Meono's petition for
review because she never filed a brief to support her claims
before the BIA and therefore failed to exhaust her administra-
tive remedies as required by 8 U.S.C. § 1252(d)(1). We note
first that a failure to exhaust administrative remedies does not
affect our jurisdiction, although it may amount to a forfeiture
of the arguments not developed before the agency. *See
Korsunskiy v. Gonzales*, 461 F.3d 847, 849 (7th Cir. 2006). Juarez-
Meono's failure to file a brief with the BIA does not necessarily
mean she failed to exhaust administrative remedies; the impor-
tant question is whether she asked the BIA to consider the
same legal arguments she makes in her petition for review.
Here, Juarez-Meono's notice of appeal stated the basic con-
tours of the claims she wished to make. Thus, her notice of
appeal was (barely) enough to preserve her arguments. *See
Capric v. Ashcroft*, 355 F.3d 1075, 1088 (7th Cir. 2004).

Initially, a threshold issue in this case had been the scope of our jurisdiction. This question turned on the applicability and operation of one of the jurisdiction-stripping provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")—8 U.S.C. § 1252(a)(2)(B)(ii). That section of the Immigration and Nationality Act ("INA") provides that no court shall have jurisdiction to review any action of the Attorney General "the authority for which is specified under this subchapter to be in the discretion of the Attorney General." *Id.* We have held that this provision blocks our jurisdiction to review discretionary immigration-agency decisions where the discretion is conferred by regulation—including denials of reopening, *Kucana v. Mukasey*, 533 F.3d 534, 536 (7th Cir. 2008), and denials of continuances, *Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007), both of which are agency decisions made discretionary by regulation.

The Supreme Court recently rejected our interpreta-tion of § 1252(a)(2)(B)(ii) and reversed our decision in *Kucana*. *See Kucana v. Holder*, 130 S. Ct. 827 (2010). The Court held that § 1252(a)(2)(B)(ii) applies only to agency decisions made discretionary by statute, not regulation. *Id.* at 831. This abrogates our treatment of § 1252(a)(2)(B)(ii) in *Ali* as well. Our review is therefore plenary—not limited to the constitutional claims and questions of law that are excepted from § 1252(a)(2)(B)(ii)'s jurisdictional bar by

a separate subsection of the statute.[4] *See* 8 U.S.C. § 1252(a)(2)(D) ("[n]othing in subparagraph (B) . . . shall be construed as precluding review of constitutional claims or questions of law"). Because the BIA has "broad discretion" in this area, however, we use "a deferential, abuse-of-discretion standard of review." *Kucana*, 130 S. Ct. at 834.

The regulatory scheme governing applications for relief from removal authorizes immigration judges to "set and extend time limits for the filing of applications and related documents." 8 C.F.R. § 1003.31(c). If an application is not filed within that time period, "the opportunity to file that application or document shall be deemed waived." *Id.* The regulations also provide that the failure to comply with biometrics requirements may be deemed an abandonment of the application:

> Failure to file necessary documentation and comply with the requirements to provide biometrics and other biographical information . . . within the time allowed by the immigration judge's order[] constitutes

---

[4] To the extent the Attorney General's jurisdictional argument rests on 8 U.S.C. § 1252(a)(2)(B)(i), it is unaffected by the Supreme Court's decision in *Kucana*; our treatment of § 1252(a)(2)(B)(i) in *Ali* and *Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 775 (7th Cir. 2007), is likewise unaffected by *Kucana*. Juarez-Meono's belated application for cancellation of removal under 8 U.S.C. § 1229b is a form of relief that falls within § 1252(a)(2)(B)(i)'s jurisdictional bar, but because both petitioners sought asylum, our jurisdiction to consider the merits—including the IJ's denial of a continuance—is intact.

abandonment of the application and the immigra-
tion judge may enter an appropriate order dismissing
the application unless the applicant demonstrates
that such failure was the result of good cause.

*Id.* § 1003.47(c); *see also id.* § 1208.10 (providing that an
alien's failure to "comply with processing requirements
for biometrics and other biographical information
within the time allowed *will* result in dismissal of the
application, unless the applicant demonstrates that such
failure was the result of good cause" (emphasis added));
*id.* § 1208.14(a) (prohibiting an IJ from granting asylum
unless an alien complies with the biometrics requirement).
A continuance requires a showing of good cause. *See*
8 C.F.R. § 1003.29 (an IJ "may grant a motion for con-
tinuance for good cause shown").

The IJ was well within his discretion to deny the peti-
tioners' continuance motions and their requests for
relief from removal as well. The petitioners conceded
before the IJ that they had no good cause for their failure
to timely file their applications for relief and submit
the required biometrics, and they have not argued against
that concession here. They claim instead that 8 C.F.R.
§ 1003.47, the regulation requiring aliens in removal
proceedings to provide biometrics, is ultra vires. This
argument is frivolous. The Attorney General is directed by
statute to establish procedures for the consideration of
applications for asylum and may "require applicants to
submit fingerprints and a photograph at such time and
in such manner" as he "determines by regulation." 8 U.S.C.
§ 1158(d)(1). More generally, the Attorney General has

statutory authority to promulgate regulations governing removal and other proceedings before immigration judges and the BIA. *See generally* 8 U.S.C. § 1103(g)(2).

The petitioners argue in the alternative that the regulation does not apply here because it became effective on April 1, 2005, and Juarez-Meono's original asylum application naming Juarez as a derivative beneficiary was filed in 1990. We have already explained, *see supra* n.1, that Juarez could not be a derivative beneficiary and was required to file his own application. More fundamentally, however, the biometrics requirements were made immediately applicable to all removal proceedings conducted after the April 1, 2005 effective date, *see* Background and Security Investigations in Proceedings Before Immigration Judges and the Board of Immigration Appeals, 70 Fed. Reg. 4743-44 (Jan. 31, 2005), which plainly includes the removal proceedings at issue here.

The petitioners also assert a rather vague due-process challenge to the denial of their motion for a continuance and the IJ's decision to deem their applications for relief abandoned. But immigration proceedings satisfy due process so long as they conform to the applicable statutory and regulatory standards, as these did. *See Ndonyi v. Mukasey*, 541 F.3d 702, 709 (7th Cir. 2008). "Although an immigration judge could conceivably impose a deadline so unreasonable that it would not afford the alien a 'reasonable opportunity' to present evidence," that did not occur here. *Hussain v. Gonzales*, 424 F.3d 622, 626 (7th Cir. 2005). The petitioners had 60 days to file their applications and well over a year

to comply with the biometrics requirements. That is plenty of time.

In the end, Juarez and Juarez-Meono fall back on an appeal to equitable considerations, arguing that the IJ should have accepted their late applications and given them more time to submit the necessary biometrics because Juarez-Meono's original asylum application was ignored and they have lived in the United States for a long time. The government's delay is not a relevant factor here; the decision when to initiate removal proceedings is committed to the discretion of immigration authorities. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999). Once removal proceedings have begun, the immigration judge has an obligation to resolve them in a "timely and impartial" manner, 8 C.F.R. § 1003.10, and applicants for relief have an obligation to comply with the statutory and regulatory prerequisites for relief. The petitioners did not do so, and they have conceded that they had no good cause for this failure.

We note in closing that the submission of biometrics is not a mere technicality, but rather is necessary to verify the applicant's identity and determine whether there are grounds for inadmissibility or ineligibility for relief. Congress has specifically prohibited the Attorney General from granting asylum to any applicant

> until the identity of the applicant has been checked against all appropriate records or databases maintained by the Attorney General and by the Secretary of State . . . to determine any grounds on which the alien may be inadmissible to or deportable from the

> United States, or ineligible to apply for or be granted asylum.

8 U.S.C. § 1158(d)(5)(A)(i).

Finally, we note that on this record there is cause to question the performance of petitioners' counsel. Although there may be more to the story, a professional investigation into his handling of the petitioners' cases appears to be warranted.[5]

---

[5] The petitioners were represented in agency proceedings and in this court by Attorney Roy Petty. As we have explained, at the November 13, 2006 hearing, Petty vaguely blamed the untimely applications and failure to provide biometrics on a "failure of communication" between his office and the petitioners, but ultimately conceded he could not show good cause for the delay. The specific nature of the asserted "failure of communication" is not clear. Nor is it clear whether the fault lies with the attorney or his clients or both. The present record, however, suggests that Petty may be responsible for the problem. Juarez's application for asylum reflects that Juarez signed it in September 2006 (by that point almost a year late); it apparently took Petty almost two months to mail the signed application to the immigration authorities. Juarez-Meono's cancellation-of-removal application was signed on November 9, 2006, *four days before the hearing* and *after* the continuance had already been denied. However, Petty had represented in his continuance motion that Juarez-Meono's application had already been mailed. At the November 13 hearing, Juarez-Meono told the IJ that she asked Petty's secretary about the fingerprint requirement and was told it was not urgent.

(continued...)

Accordingly, we DENY the petitions for review. The clerk of this court shall transmit a copy of this opinion to the Arkansas Committee on Professional Conduct and the Department of Justice's Executive Office for Immigration Review.

---

[5] (...continued)

Petty said in the continuance motions that he had been unable to devote enough time to the petitioners' cases. One of the reasons he offered for his time crunch was that he had to respond to the BIA's dismissal—on untimeliness grounds—of two unrelated appeals; dismissals that he claimed were "unwarranted." On appeal to the BIA, Petty failed to file briefs for the petitioners. He also did not file a reply brief in this court. This course of conduct warrants referral to state disciplinary authorities for possible investigation. Petty is a member of the Arkansas bar; we direct the clerk to send a copy of this opinion to the Arkansas Committee on Professional Conduct. The clerk shall also send a copy of this opinion to the Department of Justice's Executive Office for Immigration Review. *See* 8 C.F.R. §§ 1003.17(a), 1292.1(a) (regarding admission to practice in the immigration courts). Because the petitioners have been represented by Petty throughout these proceedings, there is no claim for ineffective assistance of counsel. *See Stroe v. INS*, 256 F.3d 498, 504 (7th Cir. 2001); *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988).