# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 08-2519 & 08-4058

UGOCHUKWU UMEZURIKE,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petitions for Review of Orders of
the Board of Immigration Appeals.
No. A98-146-313

ARGUED JUNE 5, 2009—DECIDED JULY 9, 2010

Before MANION, ROVNER, and TINDER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Ugochukwu Umezurike is a native and citizen of Nigeria who entered the United States on April 26, 2003, as a non-immigrant visitor for pleasure. He remained in this country beyond October 23, 2003, the date upon which his authorization expired. On June 28, 2004, he filed an application for asylum. The Department of Homeland Security referred the asylum application to the Immigration Court and placed Umezurike in removal proceedings on August 9, 2004.

Umezurike, with counsel, appeared before an immigration judge on August 24, 2004, and admitted the factual allegations contained in the Notice to Appear and conceded that he was removable as charged. Umezurike renewed his asylum application which the immigration judge also treated as a request for withholding of removal and protection under the Convention Against Torture Act. The immigration judge set a hearing on the merits for November 30, 2005, and informed Umezurike on the record and in an accompanying order that he would have to submit written documentary evidence no later than November 1, 2005, and that "[f]ailure to timely file documentation as required herein shall be deemed a waiver and abandonment of any such opportunity." R. 150, 193. The order further noted that original supporting documents from Nigeria had to be submitted no later than July 1, 2005. On the record, the immigration judge stated, "Counsel, the respondent clearly will have to be re-fingerprinted if he has not already been fingerprinted." R. 150. The written pre-hearing order reiterated that Umezurike would have to be fingerprinted no later than forty-five days prior to the hearing. R. 193. The July 1 and November 1 filing deadlines passed without word from Umezurike.

Five days prior to the scheduled merits hearing, on November 25, 2005, Umezurike's lawyer filed a letter with the court seeking a continuance on the basis that he had been hospitalized for the prior two weeks with a serious medical condition. Counsel attached a witness list to the document but no additional documentary evidence. R. 192. The immigration judge granted a con-

tinuance and reset the merits hearing for January 22, 2007. In a handwritten notation at the top, that order reiterated that Umezurike would have to be re-finger-printed no later than ninety days prior to the hearing. R. 188.

On January 17 2007, again five days prior to the scheduled hearing, Umezurike's counsel filed another list of witnesses to which he added some exhibits containing original documents and photographs from Nigeria. The documents, displaying dates ranging between October 17, 2003, and September 8, 2006, failed to conform to local operating procedures or regulations.

Umezurike did not appear for fingerprinting within forty-five or ninety days prior to the hearing. Umezurike's counsel explained to the immigration court that he had assumed his client had been fingerprinted and it was only when he began to prepare him for the hearing that he discovered that he had not. Without specifying any dates or times, Umezurike informed the court that he had contacted the U.S. Citizenship and Immigration Application Support Center in Milwaukee only to find that the person responsible for fingerprinting was on vacation and when she returned she informed Umezurike's counsel that he needed a court order for fingerprinting. Eventually, Umezurike's counsel sent his client to Chicago for fingerprinting on January 19, 2007, just three business days before the hearing but, of course, the biometric data was not available in time for the hearing.

Umezurike's counsel requested, and the immigration judge denied, an additional continuance to rectify the

fingerprint and documentary evidence deficiencies. In its ruling, the immigration judge found Umezurike to be removable as charged, deemed his applications for relief and protection abandoned and issued an order of removal to Nigeria. The immigration judge reasoned that Umezurike had abandoned his applications for relief and protection by failing to comply with the court's several orders concerning the submission of documents and by failing to make timely arrangements for fingerprinting. The court noted that the case had been pending since 2004, had already been continued once and the next available hearing date was not until February 2008. The immigration judge concluded that "[t]his would lead to an unacceptable and inordinate continuance before adjudication of what I do not believe appears to amount to a prima facie withholding or even asylum case." R. 139.

The immigration judge reasoned that the deadlines were clear from the court's instructions on the oral record, its written orders, the prehearing order and the Attorney General's administrative regulations governing the immigration courts. The immigration judge also noted that it is within an immigration judge's discretion to grant or not grant a continuance and that "failure to comply with these fingerprinting requirements can result in the Court deeming an application abandoned and/or denied." R. 140. The court determined that Umezurike had not demonstrated good cause and thus the court would not use its discretion to grant a continuance. Umezurike declined the government's offer for voluntary departure, and the court determined that

Umezurike had abandoned his opportunity to pursue asylum, withholding of removal, relief under the Convention Against Torture Act, and other forms of relief before the court.

On appeal before the Board, Umezurike argued that the immigration judge denied him a full and fair opportunity to present his case. Umezurike argued that he had undertaken efforts to be fingerprinted and that his failure to timely submit evidence was due to a misunderstanding regarding the hearing date. Counsel asserted that he had made numerous unsuccessful efforts to secure records from Nigeria. Umezurike sought to reopen the proceedings based on the fact that he had received authentication for the documents from Nigeria after the immigration judge's decision. In front of the Board, Umezurike's counsel presented his own affidavit which incorporated the documentary evidence that the Board declined to admit on appeal.

As for the fingerprint analysis, counsel's affidavit before the Board retold the story of the vacationing immigration services employee, noting that he had been informed that his client could not be fingerprinted until a particular employee returned from vacation, and that by the time that employee returned from vacation, less than one week remained before the hearing. At that point, the affidavit asserts, the employee advised counsel to send his client to Chicago for fingerprinting. The affidavit does not state when counsel first attempted to have his client fingerprinted or on what date he first called the Application Support Center. Counsel

claimed that he thought that biometric results could be available in a matter of days, and thus would be available prior to the hearing, but offered no explanation as to why he did not attempt to secure the fingerprints either ninety or forty-five days prior to the hearing as ordered by the court.

The Board of Immigration Appeals issued a single-member decision on May 20, 2008, adopting and affirming the immigration judge's decision and agreeing that the judge below properly deemed the applications abandoned when Umezurike failed to demonstrate good cause for failing to submit a fingerprint analysis in a timely fashion. The Board also affirmed the immigration judge's decision to deny admission of documents into the record when Umezurike failed to comply with the court's order regarding the deadline and manner for submitting supporting documentation. The Board concluded that the immigration judge did not abuse her discretion in denying a continuance to correct the deficiencies, as Umezurike had not demonstrated good cause for his failings. Finally, the Board denied Umezurike's request to reopen and admit evidence, noting that Umezurike failed to provide reasonable and probative evidence as to why the documentation could not have been procured and submitted in a timely manner before the immigration judge. R. 73-74.

On June 19, 2008, Umezurike filed a petition to review the Board's decision in this court. In the meantime, he also filed a motion with the Board to reconsider its May 20, 2008 decision denying reconsideration on the

same claims previously presented. The Board denied his motion to reconsider on October 30, 2008, noting that Umezurike failed to establish any error of fact or law supported by pertinent authority. Umezurike timely filed in this court a petition for review of the Board's October 30, 2008 denial of his motion to reconsider. This Court consolidated the two pending petitions for review.

Our task is to review the decision of the immigration judge and any additional reasoning supplemented by the Board in its review of the immigration judge's decision. *Milanouic v. Holder*, 591 F.3d 566, 570 (7th Cir. 2010). In this case, in addition to the decision of the immigration judge, we review two decisions from the Board. In the first decision, issued on May 20, 2008, the Board responded to Umezurike's appeal of the immigration judge's January 22, 2007 decision. The Board adopted and affirmed the decision of the immigration judge, noting that the immigration judge did not abuse her discretion by finding the application abandoned, relying largely on the immigration judge's reasoning for its own short decision. On October 30, 2008, the Board responded to Umezurike's motion for reconsideration and stay of removal by issuing a perfunctory opinion which stated that Umezurike failed to establish any material error of fact or law and had raised essentially the same arguments presented in the initial appeal. The Board abided by its prior decision.

At the time the parties submitted their briefs before this court, the law of the circuit was that the Illegal Im-

migration Reform and Immigrant Responsibility Act stripped the circuit courts of jurisdiction to review discretionary immigration agency decisions, including decisions where that discretion was conferred by regulation rather than statute. *See Kucana v. Mukasey*, 533 F.3d 534, 536 (7th Cir. 2008), *overruled* 130 S. Ct. 827, 840 (2010); *Ali v. Gonzales*, 502 F.3d 659, 663-64 (7th Cir. 2007) (holding that the court has no jurisdiction to review the denial of a continuance). That conclusion came from an interpretation of § 1252(a)(2)(B)(ii) of the Act which states that no court shall have jurisdiction to review any action of the Attorney General "the authority for which is specified under this sub-chapter to be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii).

In the interim, however, the Supreme Court rejected this circuit's interpretation of § 1252(a)(2)(B)(ii), holding that the jurisdiction stripping provisions apply only to agency decisions made discretionary by statute and not by regulation. In this case, the immigration judge refused to grant a continuance and the Board refused to reconsider or reopen the proceedings—decisions made discretionary by regulation. *See* 8 C.F.R. § 1003.2(a) ("The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board*")*; 8 C.F.R. § 1003.31 ("The Immigration judge may set and extend time limits for the filing of applications and related documents and responses thereto, if any.*")* Our review, therefore, is plenary and not limited to the constitutional claims and questions of law that are excepted from § 1252(a)(2)(B)(ii)'s jurisdictional bar. *See Juarez v. Holder*, 599 F.3d 560, 564-65 (7th Cir. 2010).

Nevertheless, because the Board has broad discretion in this area, our review is also highly deferential and we will overturn a decision of the Board only for abuse of discretion. *See Kucana v. Holder*, 130 S. Ct. 827, 834 (2010); *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992); *Kucana v. Holder*, 603 F.3d 394, 395 (7th Cir. 2010); *Juarez*, 599 F.3d at 565. Unless the Board's decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis," we will deny the petition for review. *Mungongo v. Gonzales*, 479 F.3d 531, 534 (7th Cir. 2007) (quoting *Singh v. Gonzales*, 404 F.3d 1024, 1027 (7th Cir. 2005)).

The Immigration Regulations provide that an immigration judge may deem an application abandoned where the applicant has failed to comply with fingerprinting requirements:

> Failure to file necessary documentation and comply with the requirements to provide biometrics[1] and other biographical information in conformity with the applicable regulations, the instructions to the applications, the biometrics notice, and instructions

---

[1] "Biometrics refers to the technology that converts a unique characteristic of an individual into a digital form, which is then interpreted by a computer and compared with a digital exemplar copy of the characteristic stored in the computer. Among the unique characteristics of an individual that can be converted into a digital form are voice patterns, fingerprints, and the blood vessel patterns present on the retina of one or both eyes." 5 C.F.R. § 850.103

provided by DHS, within the time allowed by the immigration judge's order, constitutes abandonment of the application and the immigration judge may enter an appropriate order dismissing the application unless the applicant demonstrates that such failure was the result of good cause.

8 C.F.R. § 1003.47(c). A different provision states, "Failure to comply with processing requirements for biometrics and other biographical information within the time allowed *will* result in dismissal of the application, unless the applicant demonstrates that such failure was the result of good cause." 8 C.F.R. § 1208.10 (emphasis added). This court has upheld the Board's refusal to grant a continuance or motions for other relief where the petitioners had no good cause for failing to submit the required biometric data. *See, e.g., Juarez*, 599 F.3d at 565.

In this particular case, the immigration court informed Umezurike three times that he would need to provide a fingerprint analysis: first, by the immigration judge on the record on August 24, 2004 (R. 150); second, on that same date in a written order which stated that Umezurike would have to make arrangements "to be fingerprinted no later than forty-five days prior to [the] next hearing (R. 193); and third, in a second order dated December 6, 2005, granting a motion for a continuance, upon which a handwritten notation stated "respondent will need to be re-printed no later than 90 days prior to the hearing." (R. 188). Despite these admonishments, nearly two and a half years passed, and Umezurike did not present himself for fingerprinting until three

business days prior to his hearing—at which point it was too late to receive the information in time. It clearly was not an abuse of discretion for the immigration judge to find that Umezurike had not supplied good cause for failing to present fingerprint data despite having three warnings that he needed to comply, and two-and-a-half years in which to do so.

Umezurike's counsel, Emmanuel Muwonge, offered vague excuses for the delay but no concrete explanations. Muwonge was hospitalized for two weeks in 2005 with a serious and debilitating illness but the court appropriately accommodated counsel by providing an almost fourteen-month continuance.

Muwonge submitted an affidavit to the Board in support of the motion for reconsideration and removal in which he claimed that he had contacted the Milwaukee immigration facility and was told that his client could not be fingerprinted until a particular individual returned from vacation. By the time that employee returned to the office, he asserted, the scheduled merits hearing was less than one week away. R. 20, 95, 158-59. It was then, he says, that he made arrangements for his client to go to Chicago for fingerprinting. Despite the several iterations of this particular story (orally before the court on January 22, 2007, and in affidavits to the Board filed on September 10, 2007, and June 19, 2008), Muwonge never provided a date upon which he first attempted to secure fingerprints for his client. *Id.* He asserted that the Milwaukee employee returned from vacation less than a week prior to the

merits hearing. The fingerprinting, however, was due more than ninety days prior to the merits hearing, and we find it difficult to imagine that the employee was gone more than ninety days, and if she were, that there was no other employee who could have assisted Muwonge in her absence. In any event, Muwonge's vague and confusing story fails to provide any details regarding the dates upon which he attempted to secure fingerprinting or any other evidence of those attempts (which might have included a letter from the employee in the Wisconsin Application Support Center) or otherwise to provide good cause for failing to submit fingerprint data in a timely fashion, despite having had notice of the requirement for more than two and a half years.

Umezurike argues for the first time on appeal that the immigration judge could not rely on Umezurike's failure to submit biometrics data as required in 8 C.F.R. § 1003.47 and 8 C.F.R. § 1208.10 to deem his application abandoned because the effective date of these provisions was April 1, 2005, and Umezurike first appeared before the immigration judge on August 24, 2004. This argument was not raised below and has been waived. In any event, the biometrics requirements were made immediately applicable to all removal proceedings conducted after the April 1, 2005 effective date. *See Juarez*, 599 F.3d at 565-66 (citing Background and Security Investigations in Proceedings Before Immigration Judges and the Board of Immigration Appeals, 70 Fed. Reg. 4743-44 (Jan. 31, 2005)). Umezurike's merits hearing was originally scheduled for November 30, 2005, and was extended upon Umezurike's motion to January 22, 2007,

and thus under any scenario, the fingerprinting requirements applied to Umezurike's hearing.

In short, counsel's arguments about confusion over the fingerprinting process do not hold water. As Umezurike's counsel points out in the brief, the directions for complying with fingerprinting requirements are on the website of the U.S. Citizenship and Immigration Service. (See Umezurike's Brief at 30-31). Counsel had two and half years to determine the procedure and verify that it had been completed.[2]

The immigration judge did not abuse her discretion in denying a continuance and finding that Umezurike had abandoned his application for failure to comply with the fingerprinting requirements. This alone is reason to find that the immigration judge did not abuse her discretion in finding that Umezurike abandoned his application, but his failure to timely file documentary evidence adds further support to the conclusion.

An immigration judge may set time limits for the filing of documents and evidence. 8 C.F.R. § 1003.31. "If an application or document is not filed within the time

---

[2] Whether to grant a motion to reopen premised on ineffective assistance of counsel is left to the discretion of the Board. *See Ghaffar v. Mukasey*, 551 F.3d 651, 656 (7th Cir. 2008). *But see Stroe v. I.N.S.*, 256 F.3d 498, 501 (7th Cir. 2001) (The BIA requires certain proof before filing a motion to reopen deportation proceedings based on a claim of ineffective assistance of counsel.).

set by the immigration judge, the opportunity to file that application or document shall be deemed waived." *Id.* Although it is conceivable that an immigration judge could impose a deadline so unreasonable that it violates due process, that surely was not the case here. *See Juarez*, 599 F.3d at 566; *Hussain v. Gonzalez*, 424 F.3d 622, 626 (7th Cir. 2005). The Local Operating Procedures for the Executive Office of Immigration Review indicate that all proposed exhibits and briefs must be submitted no later than ten calendar days prior to the scheduled hearing unless otherwise authorized by the Immigration Judge. The Local Operating Procedures for the Executive Office of Immigration Review Procedure 2(C). R. 204. An immigration judge may set a more stringent deadline than that imposed by the local operating instructions. *Hussain*, 424 F.3d at 626.

As of August 24, 2004, Umezurike knew that he would have to submit foreign documents by July 1, 2005 (a little less than one year from the date of the order), and other documents by November 1, 2005. Umezurike did not submit foreign documents by July 1, 2005—a date which preceded his counsel's hospitalization by more than four months. That day came and went without any motions or communication with the court. As did the November 1, 2005 deadline for other documents. Umezurike's counsel, Muwonge, was hospitalized five days later—from November 5 through November 19, 2005—and was rightfully excused from submitting documents during that time and for some time after, but he had more than a full fourteen months following his hospitalization to secure documents from Nigeria,

and more importantly, fourteen months prior to his hospitalization to do so. Furthermore, although his affidavits assert that he had difficulty securing documents from Nigeria, he offers no details regarding the dates of his attempts—no phone records and no photocopies of correspondence or any other evidence of attempts to procure documents from Nigeria. Although counsel states over and over that he made diligent efforts to procure the documents from Nigeria, not once, through several rounds of briefing, does he state a date upon which he first attempted to procure those documents.

Finally, Umezurike's counsel asserted that he believed the hearing had been set for January 26 instead of January 22 and it was not until counsel spoke with the court clerk that he learned that the hearing was on the earlier date. The court's notice of hearing, however, clearly indicated that the hearing was scheduled for January 22, 2007, and it was undisputed that the notice was mailed to and received by counsel's office. R. 188, 164-165.

Once again, the immigration judge did not abuse her discretion by finding that Umezurike had abandoned his application by failing to comply with court deadlines. *See Juarez*, 599 F. 3d at 566 (immigration judge did not violate due process rights of immigrant by deeming his application abandoned after immigrant failed to file applications and biometrics in a timely fashion); *Hussain*, 424 F.3d at 626 (immigration judge did not violate due process rights by denying petitioner's motion for an extension of time to file foreign documents where nine

months had elapsed since the petitioner filed his asylum application.) Consequently, the petition for review must be denied.

As a final note, counsel's failure to meet multiple deadlines over such an extended period of time gives this court great concern, particularly in light of the lack of evidence of diligent efforts on counsel's part to meet those deadlines. Even taking into account counsel's ill health, several deadlines passed prior to his hospitalization without counsel filing any motions for extensions or otherwise contacting the immigration court. Counsel also had fourteen months following his hospitalization and before the merits hearing in which to rectify any filing failures. Counsel has not provided any dates or evidence concerning his efforts to secure documentary evidence in a timely manner or to ensure that his client was fingerprinted in the time frame required by court order. This court is not in a position to undertake the fact-finding required to determine whether counsel has provided competent representation to his client in this matter. Consequently, we direct the clerk to send a copy of this opinion to the Wisconsin Office of Lawyer Regulation.

In sum, we deny the petition for review. The clerk shall transmit a copy of this opinion to the Wisconsin Office of Lawyer Regulation.