PSM-194                                                   NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1281
_____

HERBERTH ALEXANDER MELGAR,
                                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                    Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099 745 688)
Immigration Judge:  Honorable Michael W. Straus
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 12, 2011

Before:  AMBRO, HARDIMAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed: August 23, 2011)

_____

OPINION
_____

PER CURIAM

        Herberth Alexander Melgar petitions for review of an order of the Board of

Immigration Appeals ("BIA"), which affirmed without opinion an Immigration Judge's

("IJ") removal order.  For the reasons that follow, we will deny the petition for review.

Melgar is a native and citizen of Guatemala. He arrived in the United States in November 1995 on a travel visa, and was placed into removal proceedings in February 2010 for overstaying his visa.

At his initial hearing on February 19, 2010, he appeared pro se and received a continuance in order to find an attorney. The IJ then granted him three additional continuances until April 23, when a legal services attorney appeared in court and requested one final continuance in order to meet with Melgar and finalize his applications for adjustment of status and cancellation of removal. On April 30, counsel again appeared on Melgar's behalf, conceded removability, and indicated that Melgar still planned to apply for relief from removal. Counsel indicated that all applications for relief would be filed by the next hearing date, May 28, 2010. On May 28, the IJ gave him one additional continuance in order to submit his applications, and indicated that if a completed application was not submitted on June 11, the IJ would order him removed.

On June 11, 2010, Melgar's attorney appeared in court, with Melgar appearing via videoconference from Essex County Jail, where he was being detained. At that time, Melgar stated on the record that he did not want the attorney to represent him, that he had filled out an application for adjustment of status on his own, and that he did not want the court to accept the application counsel had completed on his behalf. The IJ advised Melgar to place his application in the mail, and warned him that if it was not received by June 25, the IJ would order him deported to Guatemala. Melgar replied, "All right. I'm going to mail it to you then, Your Honor." A.R. 158.

On June 25, Melgar appeared by videoconference. He had not yet submitted his

application.  He told the IJ he had not submitted it because he did not have access to a photocopier and could not make a copy to keep for his own records.  The IJ advised him to make a manual copy for himself, send the original to the court, and the court would provide service to opposing counsel.  Alternatively, the IJ advised Melgar to give the application to a friend or relative to hand deliver to the court.  By the time of his next hearing, on July 16, his application still had not been received.  Melgar explained that he had not mailed it because he was afraid it would get lost in the mail.  The IJ continued the proceedings one last time until August 24, 2010.  By the time of the August 24 hearing, Melgar still had not submitted his application for adjustment of status.  Accordingly, the IJ deemed his application abandoned and ordered him removed to Guatemala.  Melgar appealed to the BIA, which affirmed without opinion.  Melgar, proceeding pro se, filed a timely petition for review.  In his brief, Melgar basically argues two points:  (1) he had a statutory right to appear in person for his hearings before the IJ; and (2) his application should not have been deemed abandoned because he had the application filled out and ready to submit at each of the last five hearings.

We have jurisdiction pursuant to 8 U.S.C. § 1252 (section 242 of the Immigration and Nationality Act ("INA")).  When the BIA has affirmed an IJ's decision without opinion, we review the IJ's decision.  Al-Fara v. Gonzales, 404 F.3d 733, 738 (3d Cir. 2005).  An IJ's factual determinations are reviewed to determine whether they are supported by substantial evidence.  INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).  We review legal determinations de novo.  Dong v. Att'y Gen., 638 F.3d 223, 228 (3d Cir. 2011).  To the extent Melgar challenges the fact that the IJ did not grant him another

3

continuance on August 24, 2010, we review the denial of his (implicit) motion for a continuance for an abuse of discretion. Hashmi v. Att'y Gen., 531 F.3d 256, 259-60 (3d Cir. 2008).

Melgar argues that pursuant to INA § 240(b)(2) (8 U.S.C. § 1229a(b)(2)), he had the right to appear in person for his removal hearings.[1] We agree with the Government that his interpretation of the statute is incorrect. The pertinent section provides:

> (2) Form of proceeding
>     (A) In general
>     The proceeding may take place--
>         (i) in person,
>         (ii) where agreed to by the parties, in the absence of the alien,
>         (iii) through video conference, or
>         (iv) subject to subparagraph (B), through telephone conference.
>     (B) Consent required in certain cases
>     An evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the alien involved after the alien has been advised of the right to proceed in person or through video conference.

8 U.S.C.A. § 1229a(b)(2). It is clear from the plain language of the statute that proceedings may be conducted by video conference, and that consent of the alien is only

---

[1] The Government states that Melgar's first four hearings occurred in person and that the other eight were by means of video conference. Respondent's Brief at 14, n.5. Melgar disputes this statement, and asserts that all of his hearings took place via video conference. There is some indication in the record that the first four hearings, despite their lack of the notation "via televideo," took place by video conference. See e.g., A.R. 109-10 (at Feb. 19, 2010 hearing IJ indicates that Melgar's father can attend next hearing "while you are over there," and indicating that she will mail a notice of hearing and a notice to appear to Melgar); A.R. 114 (at March 5, 2010 hearing IJ indicates that she will mail notice of next hearing); A.R. 117 (at March 19, 2010 hearing Melgar states, "I can see that my father is there"); A.R. 125 (at April 9, 2010 hearing Melgar asks, "Is my father there by any chance?"). In any event, we need not determine whether all or just some of the hearings took place by video conference, because even if all of the hearings took place by video conference, we find no error.

4

required if a telephone conference is used instead. Eke v. Mukasey, 512 F.3d 372, 382 (7th Cir. 2008) (statute "specifically authorizes proceeding by means of a video conference").

To the extent Melgar argues that his due process rights were violated by having to appear by video conference, we hold that there was no due process violation. Melgar has not indicated that he was in any way deprived of the "opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976); cf. Rusu v. INS, 296 F.3d 316 (4th Cir. 2002) (no due process violation where hearing proceeded via video conference even though record revealed several instances where alien had difficulty communicating with IJ). Melgar seems to suggest that he was precluded from submitting his application because he was not allowed to appear in person, but he made no attempt to submit the application by mail.

Melgar argues that the IJ should not have deemed his application "abandoned" as he had an application filled out and ready to turn over during his last five hearings. The IJs[2] had the authority to set time limits for the filing of documents, and could deem an application waived if not filed within the time set. 8 C.F.R. § 1003.31(b); Umezurike v.

---

[2] Melgar appeared before five different IJs in his various hearings.

Holder, 610 F.3d 997, 1004 (7th Cir. 2010). "Although it is conceivable that an immigration judge could impose a deadline so unreasonable that it violates due process, that surely was not the case here." Id. Melgar was informed that having a completed, but unsubmitted, application was not sufficient. He was repeatedly informed that he should mail the original to the Immigration Court, and he stated that he would do so. He was twice told that if the application was not submitted by the next hearing, he would be ordered removed, although each time the IJ gave Melgar one more chance. Yet, at the final hearing Melgar admitted that he had never mailed the completed application. A.R. 199. We hold that the IJ did not abuse his discretion in determining that the application was abandoned.

Finally, to the extent Melgar argues that the IJ denied his implicit motion for a continuation to file his application, we hold that the IJ did not abuse his discretion in denying a final continuance. The decision to grant or deny a continuance is within the discretion of the IJ and will not be overturned on appeal to the BIA unless it appears that the respondent was deprived of a full and fair hearing. See 8 C.F.R. § 1003.29; Matter of Perez-Andrade, 19 I. & N. Dec. 433, 434 (BIA 1987). While Melgar argues that he is eligible for adjustment of status based on an approved visa petition filed by his father, the fact remains that he failed, time and again, to submit an application to the IJ. In all, he received ten continuances to obtain counsel, fill out his adjustment application, and submit it to the court. He failed to take the final step. In his brief to the BIA and in his briefs here, Melgar complains that he was repeatedly assigned to different IJs and different attorneys from legal services, that he did not have access to a photocopier while

6

in detention, that, contrary to the IJ's advice, he was not permitted to hand documents to or accept documents from non-legal visitors, that he did not trust the prison mail system, and that he had the application prepared as of June 11, 2010, and simply wanted to be able to hand it to the IJ or the prison guard and was not able to. While Melgar undoubtedly faced a more difficult task in preparing his application than a non-detained applicant, he has never asserted that he placed his application in the prison mail system. It is not clear how another continuance would have altered his situation. Furthermore, he seems to have been able to mail his notice of appeal and appeal brief to the BIA, and he successfully mailed several documents to this Court. We cannot find that the denial of an additional continuance was an abuse of discretion.

For the foregoing reasons, we will deny the petition for review.