In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3849

AIMIN YANG,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR.,
Attorney General of the United States,

*Respondent*.

On Petition for Review of an Order of
the Board of Immigration Appeals.
No. A079 013 934

ARGUED JUNE 4, 2014 — DECIDED JULY 25, 2014

Before WOOD, *Chief Judge*, and CUDAHY and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*. Aimin Yang, the petitioner in this case, is in a difficult position. After Feng Li, who is a U.S. citizen, married Yang, Li submitted a Petition for Alien Relative form (Form I-130) to the U.S. Citizenship and Immigration Services (USCIS) on Yang's behalf. If approved, this form permits the alien relative to file a Form I-485 for adjustment

of status to that of a lawful permanent resident; he or she may do so, however, only once a visa number becomes available. USCIS sent Li a notice of intent to deny, not because there was anything wrong with the marriage (which was Yang's third), but because it believed that Yang's *second* marriage had been a sham. Yang and Li submitted materials to rebut this allegation, but USCIS lost them and then denied the I-130 petition for lack of support. Li appealed that decision to the Board of Immigration Appeals (Board). On a separate track, Yang sought asylum, withholding of removal, and relief under the Convention Against Torture (CAT). He was unsuccessful. He has now brought before us a petition for review of the Board's decision denying all relief. Although we are satisfied that the Board did not abuse its discretion in denying Yang's request for asylum and associated relief, the same cannot be said for its decision to uphold the IJ's denial of a continuance pending adjudication of Yang's I-130; we grant the petition for review only on that basis.

## I

Yang is a native and citizen of China who entered the United States on April 9, 1998, as a tourist. On October 6, 2000, he married a U.S. citizen, Deirdre Prestin. Prestin filed an I-130 visa petition and application for adjustment of status on Yang's behalf on November 16, 2000, but in the wake of marital problems, she withdrew her petition on January 10, 2003. In August of 2003, Yang's application for adjustment of status was denied after an investigation led USCIS to conclude that his marriage to Prestin was for immigration purposes only and thus fraudulent. In November 2007, he and Prestin were divorced.

In August 2003, the Department of Homeland Security (DHS) initiated removal proceedings against Yang. He conceded removability, but shortly after his divorce from Prestin he filed an application for asylum and associated relief based on his practice of Falun Gong. He asserted that he began practicing Falun Gong in China in 1997 after doctors were unable to cure his pneumonia. Two months of Falun Gong exercises, he reported, restored his health and persuaded him to become a more serious practitioner. Matters took a turn for the worse, however, when his work supervisors discovered his practice of Falun Gong and told him that he would be fired if he did not stop. He did not heed their warnings. Although Falun Gong was not officially banned in China until July 1999, in March 1998 the police arrested Yang and placed him in a cell overnight. During that encounter, they told him that he should stop practicing Falun Gong and slapped him twice on the face, causing his gums to bleed. These encounters prompted Yang's first wife to divorce him, and not long afterward he came to the United States.

In this country, Yang continued practicing Falun Gong. Though he generally did so alone, he attended some group meetings and a number of protests in New York outside the Chinese consulate, where he was photographed. Yang testified that his father (still in China) was visited by Chinese officials around January 2012; the officials questioned his father about Yang's whereabouts. They also asked why Yang had not yet returned from the United States and whether Yang had participated in any anti-government activities. Upon learning of this conversation, Yang became afraid that Chinese officials were aware of his practice of Falun Gong in the United States.

The first merits hearing in Yang's removal case took place in September 2008. About a month later, Yang married Li. As we noted, Li immediately filed an I-130 petition on Yang's behalf, but USCIS tentatively decided to deny it on the grounds that Yang's marriage to Prestin had been a sham.

When Yang and Li received the Notice of Intent to Deny Li's I-130 petition, they assembled a comprehensive response to demonstrate the *bona fides* of the Prestin marriage and sent it to USCIS using an overnight express delivery service. The package included an affidavit from Prestin swearing that the marriage was *bona fide*; an affidavit from Prestin's daughter confirming Yang's good character; an affidavit that the marriage was genuine from one of Yang's friends; a statement from one of Prestin's colleagues to the same effect; and Yang's own affidavit explaining both the romance and the break-up of the marriage. Yang also explained that he had lived apart from Prestin solely because of the demands of his job. The delivery service's tracking receipt showed that the package arrived at USCIS at 11:30 a.m. on July 24, 2011, three days before the deadline, and that the receipt was signed by an employee. Nonetheless, USCIS issued a final order denying Li's I-130 application on the mistaken ground that she had failed to file a response to the Notice of Intent to Deny. Li appealed the denial to the BIA, pointing out the mistake of fact, and she included the receipt showing that USCIS had indeed received the responsive materials. The Board recognized the error and on April 30, 2013, it remanded the I-130 denial to the District Director. As far as we know, that is where it still is.

While the I-130 issues were percolating, Yang's removal proceedings continued to progress. On July 30, 2012, Yang had his final merits hearing. At that time his attorney informed the IJ that Yang had not updated his fingerprints since September 23, 2010, even though he was required to do so for his asylum application. The attorney explained that Yang had tried to submit fingerprints from New York, but could not because the removal proceedings were out of state. (At oral argument, counsel asserted that the immigration authorities do not accept fingerprints from just anywhere, and so it can be difficult for someone to arrange for this seemingly straightforward task to be done.)

On July 12, 2012, Yang filed a motion to continue his hearing date until a time after the re-adjudication of Li's I-130 petition (and a renewed petition she filed). But on July 30, 2012, the IJ issued a decision from the bench finding Yang removable, denying asylum and related relief, denying the requested continuance, and granting voluntary departure. Addressing the continuance, the IJ said that "the respondent has the right to appeal [USCIS's mistaken denial of Li's I-130 for lack of response but] [h]e has no right to delay his removal hearing until the appeal is adjudicated, which could last a number of years." On November 27, 2013, the Board dismissed Yang's appeal of the IJ's decision and denied his motion for a remand to USCIS. The Board agreed with the IJ that Yang was barred from asylum for failing to file within a year of his arrival and failing to demonstrate extraordinary or changed circumstances warranting an exception. Yang was not entitled to withholding of removal, the Board confirmed, because the relatively mild events Yang had recounted were not enough to show that he had been persecuted in the past or that it was more likely than not that his life or

freedom would be threatened in China upon his return. The
Board also affirmed the IJ's alternative ground for denying
withholding, which was based on Yang's failure to present
updated "biometric requirements" (the fingerprints). The
Board also rejected Yang's CAT application. Finally, it found
that the IJ acted within his discretion when he declined to
grant the continuance, and it denied Yang's request to re-
mand the case to the IJ for further proceedings on the I-130
and I-485 forms that Yang had refiled. Despite the fact that
the Board already had remanded the District Director's de-
nial of the I-130 petition to consider the evidence that Yang
had properly submitted, it wrote that "such decision did not
reverse the director's denial of his visa petition." In a foot-
note, the Board went out of its way to say that its decision
was not one "on the merits of the [USCIS's] denial of the un-
derlying I-130 visa petition." The net result for Yang was an
order of removal.

## II

Yang has brought this bureaucratically messy case before
us through his petition for review. In it, he challenges the
denial of his asylum, withholding of removal, and CAT ap-
plications as well as the denial of his request for a continu-
ance pending a final determination of the I-130 petition. We
quickly dispose of the former arguments so that we can fo-
cus on the continuance.

*Asylum Application*

Asylum applications must be filed within one year after
the date the seeker arrives in the United States. 8 U.S.C.
§ 1158(a)(2)(B). Yang filed for asylum in 2007, either eight or
nine years after he arrived here from China. His application

must be denied as untimely unless he demonstrates either the existence of changed circumstances that materially affect his eligibility for asylum or extraordinary circumstances relating to the delay in filing the petition, 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(4), (5). The IJ and Board found that he had not shown that he qualified for either exception to the one-year rule and thus denied his petition. Yang argues that they erred in so concluding.

Whether they were right or wrong is not, however, the immediate question before us. We can reach that issue only if we have jurisdiction to address it. Courts generally lack jurisdiction to review a determination that an asylum application is barred on the ground of noncompliance with the statutory time limit or the denial of one of the statutorily allowed excuses, 8 U.S.C. § 1158(a)(3). It is true that the REAL ID Act of 2005 supplies jurisdiction for review of constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(D), added by the REAL ID Act of 2005, § 106(a)(1)(ii), Pub.L. No. 109–13, 119 Stat. 231, 310–11 (2005); see also *Mabasa v. Gonzales*, 455 F.3d 740, 744 (7th Cir. 2006). But there's the rub. We have held that the issues of changed or extraordinary circumstances are questions of fact that lie outside the realm of § 1252(a)(2)(D). See, *e.g., Viracacha v. Mukasey*, 518 F.3d 511, 514–15 (7th Cir. 2008). We are aware that some circuits have concluded that these issues are reviewable mixed questions of law and fact, see, *e.g., Mandebvu v. Holder,* No. 11-3969, 2014 WL 2743608 at *6 (6th Cir. June 18, 2014); *Vahora v. Holder,* 641 F.3d 1038, 1042 (9th Cir. 2011). But others agree with us, *e.g., Goromou v. Holder,* 721 F.3d 569, 579-80 (8th Cir. 2013); *Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 331–32 (2d Cir. 2006). We are not inclined to change our approach and thus conclude that we have no jurisdiction

to address Yang's arguments based on changed or extraordinary circumstances.

*Denial of Yang's withholding of removal application*

Under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), the Attorney General must grant withholding of removal to an alien who shows that his "life or freedom would be threatened in that country of removal because of [his] race, religion, nationality, membership in a particular social group, or political opinion." To establish eligibility for withholding of removal, the applicant must show that it is more likely than not that he will face persecution in the country to which the government plans to remove him. See *INS v. Stevic*, 467 U.S. 407, 429–30 (1984). The Act does not define "persecution," but we have described it as "'punishment or the infliction of harm for political, religious, or other reasons that this country does not recognize as legitimate.'" *Mitev v. INS*, 67 F.3d 1325, 1330 (7th Cir. 1995) (quoting *De Souza v. INS*, 999 F.2d 1156, 1158 (7th Cir. 1993)); see also *Capric v. Ashcroft*, 355 F.3d 1075, 1084 (7th Cir. 2004) (internal quotation marks and citations omitted) (persecution "includes detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, … torture, behavior that threatens the same, and non-life-threatening behavior such as torture and economic deprivation if the resulting conditions are sufficiently severe.").

The IJ rejected Yang's application for withholding of removal on two independent grounds, which the Board affirmed. First, the IJ found that Yang failed to establish that the Chinese authorities were aware or likely to become aware of his Falun Gong-related activities in the United States. Furthermore, the IJ found the contact between Yang's

father and Chinese police in 2012 was not enough to permit the inference that the Chinese authorities were "specifically aware" of his Falun Gong practices. The IJ also doubted that the Chinese government would punish its citizens for engaging in Falun Gong outside of China. In the alternative, the IJ found that Yang's failure to comply with the biometrics requirement was an independent ground to reject his application. See 8 C.F.R. §§ 1003.47(c), (d), & 1208.10; see also *Umezurike v. Holder*, 610 F.3d 997, 1002 (7th Cir. 2010). We review the decision of the IJ as supplemented by the additional reasoning of the Board. *Milanouic v. Holder*, 591 F.3d 566, 570 (7th Cir. 2010). We must deny the petition if the IJ's decision is supported by reasonable, substantial, and probative evidence on the record as a whole; we may reject the ruling only if the record compels a contrary result. See *Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007).

The IJ was not on solid ground when he found that there was no indication that the Chinese government was specifically aware of Yang's practice of Falun Gong. According to Yang, whose account the IJ was willing to credit, police held him overnight and hit him in the face *because of* his Falun Gong activities before he left China. The Chinese police also went back to Yang's father's house in 2012 inquiring about whether Yang was involved in "anti-government" activities while in the United States. Nevertheless, we need not decide whether the IJ abused his discretion when he found to the contrary, because Yang has no satisfactory answer to his failure to comply with the biometrics requirement.

The applicable regulations do not make the submission of current fingerprints optional. They provide that "[f]ailure to comply with processing requirements for biometrics and

other biographical information within the time allowed *will* result in dismissal of the application, unless the applicant demonstrates that such failure was the result of good cause." 8 C.F.R. § 1208.10 (emphasis added). The IJ required Yang to submit several sets of fingerprints: one within two weeks of the master calendar hearing, and another within one year of any continued hearing. Yang did not do so. Even though we wonder why USCIS requires applicants continually to *re*-fingerprint and the government's counsel had no explanation for this practice when asked at oral argument, we are not responsible for the wisdom or efficiency of the agency's rules. The IJ expressly ordered multiple rounds of fingerprinting; Yang did not comply; and the regulations say such a failure *will* result in dismissal.

Although in theory someone might show good cause for a failure to submit required biometric data, Yang did not do so. He asserts only that he made "diligent efforts" and told the Trial Attorney Unit that USCIS had an earlier set of fingerprints. But simply stating that one made "diligent efforts" without further details is not enough, and we find it hard to see how Yang could prove diligence when he had at least two years to arrange for the new fingerprints. As *Umezurike* held, when counsel offers only "vague excuses for delay but no concrete explanations," we will not find an abuse of discretion. See *Umezurike*, 610 F.3d at 1003.

Even if we were to reach the merits, Yang's applications for withholding of removal and relief under the CAT cannot succeed. Neither of those is untimely, but the IJ and the Board did not abuse their discretion when they concluded that Yang's one night in the police station and slaps were not sufficiently severe to warrant relief. See INA § 241(b)(3)(A), 8

U.S.C. § 1231(b)(3)(A) (withholding of removal); 8 C.F.R. § 1208.16 (CAT).

*Motion for continuance*

We review the denial of a continuance for abuse of discretion. See *Calma v. Holder*, 663 F.3d 868, 876 (7th Cir. 2011). This is a deferential standard, under which we uphold the Board's decision unless it "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* at 878.

In *Matter of Hashmi*, 24 I. & N. Dec. 785, 790–91 (B.I.A. 2009), a precedential opinion, the Board discussed the factors an IJ should consider when deciding whether to grant a continuance. See also *Calma*, 663 F.3d at 872. "[D]iscretion should be favorably exercised," it held, "where a prima facie approvable visa petition and adjustment application have been submitted in the course of an ongoing removal hearing. This presumption is reasonable given the significant interest at stake—the chance to acquire lawful permanent resident status through a family-based visa petition." *Hashmi*, 23 I. & N. Dec. at 790. It offered the following non-exclusive checklist for continuance requests:

- The likelihood that the adjustment will be granted;

- USCIS's response to the motion, though "unsupported opposition does not carry much weight," *id.* at 791;

- Whether the underlying visa petition is *prima facie* approvable;

- The alien's statutory eligibility for adjustment of status;

- Whether other aspects of the alien's background (such as family ties in the United States, length of residence in the country, hardship of travel, and immigration history) merit a favorable exercise of discretion; and

- The reason for the continuance and which party is more responsible for the delay.

Most of the points on that list either favor Yang or are neutral. The final point is especially important in his case: the reason the continuance was needed was directly related to USCIS's carelessness in losing the critical package of supporting materials that Yang and Li sent—materials that would have responded to the agency's qualms about the Prestin marriage. The IJ elided the agency's misstep entirely. He gave two reasons for denying the continuance: (1) the supposed fact that the second marriage had been shown to be a sham, and thus gave rise to a statutory bar to adjustment, and (2) the fact "that the [third] marriage occurred after the first merits hearing." The Board said only that Yang's visa petition "remains denied"—a point Yang obviously knew—without explaining why the removal proceeding could not, in these unusual circumstances, be coordinated with the measures taken to cure USCIS's negligence.

The IJ's second "reason" is actually just a statement of fact; he did not explain why the timing of the Li marriage required the denial of a continuance. No one has ever suggested that the Li marriage is a sham, and so that ground is not available to support the IJ's decision. In fact, there is am-

ple evidence in the record to support the genuineness of the Li marriage: Yang and Li had a five-year relationship before they married, and so this was not a last-minute liaison hatched after immigration proceedings began. The reason their marriage happened when it did was because it took Li a long time to extricate herself from her own prior marriage. On this record, the timing of Yang's marriage to Li offers no support to the decision to deny the continuance. The IJ merely stated a fact without explaining why that fact was a reason for his ruling. Denial of a continuance on the basis of a non-reason is an abuse of discretion. See *Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004).

This leads us to the IJ's other reason for his ruling: the purportedly sham nature of Yang's second marriage. But that was the issue that USCIS's carelessness had prevented Yang from contesting. Yang and Li strenuously deny that allegation. Since the cause for the delay is attributable to the government and not Yang, it "augurs in favor of a continuance." *Hashmi*, 23 I. & N. Dec. at 793.

Had the IJ taken the Board's advice and moved through the *Hashmi* checklist, the ultimate decision on the continuance would have been better informed. In particular, the Board's list effectively instructs the IJs to take a peek at the merits of the pending application before ruling. In this case, in assessing Yang's likelihood of success (the first factor) the judge should have looked at Yang and Li's response to USCIS's sham-marriage allegation. See *id.* Had he done so, he would have found significant and credible evidence of the legitimacy of Yang's second marriage. He would have seen, for example, the crucial role Yang played and plays as a stepfather to Prestin's daughter, as explained by his step-

daughter in sworn statements, and he would have found significant third-party confirmation that the marriage was real. Other aspects of Yang's background, such as the role he plays in his family with Li, would also have illuminated the decision. See *id.*

Since neither of the reasons the Board relied on for the denial of the continuance withstands scrutiny, we are compelled to conclude that the decision stands unsupported by any reason. It thus represents an abuse of discretion, and Yang is entitled to one more chance to pursue this line of relief.

*********************

The IJ's denials of Yang's request for asylum, withholding of removal, and relief under the CAT were not an abuse of discretion and so we DENY his petition for review from those aspects of the Board's decision. We conclude, however, that the IJ's reasons for denying the continuance Yang requested, as supplemented by the Board, fail to confront the facts of this case and do not meet the standards the Board set for itself in *Hashmi.* We therefore GRANT the petition for review on that point only and REMAND the case to the Board for further proceedings consistent with this opinion.