In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 21-3253

ISRAEL JUAN M. URZUA ORTEGA

*Petitioner,*

*v.*

MERRICK B. GARLAND,
Attorney General of the United States,

*Respondent.*

_____

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A099-025-449

_____

ARGUED SEPTEMBER 12, 2022 — DECIDED MARCH 29, 2024

_____

Before EASTERBROOK, KIRSCH, and JACKSON-AKIWUMI,
*Circuit Judges.*

KIRSCH, *Circuit Judge.* Israel Juan Miguel Urzua Ortega, a
native and citizen of Mexico, illegally reentered the United
States, and his prior order of removal was reinstated. Ortega
sought withholding of removal under the Immigration and
Nationality Act, 8 U.S.C. § 1231(b)(3). Both an immigration
judge and the Board of Immigration Appeals found Ortega

ineligible for withholding of removal. Because substantial evidence supports the agency's determination that Ortega failed to establish that he would be persecuted by individuals whom the Mexican government would be unable or unwilling to control, we deny the petition.

I

Israel Juan Miguel Urzua Ortega is a native and citizen of Mexico and has spent most of his life in Mexico City. Ortega and his family have experienced multiple attacks and threats of violence. When Ortega was young, his father was murdered. While the perpetrators were charged and sentenced, Ortega later learned that the murder was ordered by his father's cousin, Tacho, who is a member of the Sinaloa cartel. When Ortega was a teenager and serving in the military, someone—who Ortega believes was sent by Tacho—verbally threatened to kill him and shot him in the leg. Ortega told his military general, who sent a captain-led escort to investigate the shooting, but the shooter had fled.

After Ortega left the military to work in security as an armored truck driver, he began receiving threatening messages on his beeper device, but he did not tell anyone about the threats. Ortega then changed jobs and started working as a firefighter, and he again received threatening messages. He informed the firefighter general, who agreed to transfer him to a different station. But he continued receiving similar messages and had to be transferred to a third station. When leaving the third station one day, Ortega was followed by individuals in a vehicle, but he outmaneuvered them and called the police from a gas station. The police arrived, but Ortega did not file a police report. The next day, Ortega was again followed by individuals in a vehicle, one of whom pointed a gun

at him. He was once more able to outmaneuver the car, and he called police detectives. The detectives assisted him right away and recommended that he file a report with the prosecutor's office, which he did.

Soon after, in 2002, Ortega quit his job and came to the United States without authorization. He returned to Mexico in 2006 after his mother informed him that Tacho was threatening his son. While trying to reenter the United States via airplane using a fake visa, Ortega was discovered and ordered removed. But he eventually reentered the United States without authorization on foot at the land border. Even while residing in the United States, Ortega continued receiving numerous threatening messages and phone calls, which he suspects were from individuals associated with Tacho.

In 2021, Ortega was arrested for driving on a revoked license, and the Department of Homeland Security reinstated his 2006 removal order. Ortega claimed a fear of returning to Mexico, but the asylum officer determined that he did not have a reasonable fear of persecution or torture. An immigration judge vacated the decision, and withholding proceedings followed. After holding a hearing, the IJ denied Ortega's withholding application, finding that he "failed to establish that he would be persecuted by the government or groups or individuals that the government is unwilling or unable to control if he returns to Mexico." In so holding, the IJ noted that the Mexican government was exceptionally responsive to the prior threats against Ortega and his family, Tacho was incarcerated in Mexico, and Ortega had continued to receive

threats even while living in the United States. The Board of Immigration Appeals adopted and affirmed the IJ's decision.

## II

"Where, as here, the BIA's decision adopts and affirms the IJ's conclusion as well as provides its own analysis, we review both decisions." *Guzman-Garcia v. Garland*, 996 F.3d 480, 483 (7th Cir. 2021) (cleaned up). Legal questions are reviewed de novo, and findings of fact are reviewed for substantial evidence. *Id.* We will affirm so long as the agency's decision "is supported by reasonable, substantial, and probative evidence." *Lozano-Zuniga v. Lynch*, 832 F.3d 822, 826 (7th Cir. 2016) (citation omitted). This standard is "extremely deferential," and we will reverse "only if the facts compel the opposite conclusion." *Id.* (citation omitted).

To qualify for withholding of removal, Ortega may show that he would be persecuted in Mexico because of his membership in a particular social group, 8 U.S.C. § 1231(b)(3)(A), which here is his membership in the Urzua Ortega family. See *Gonzalez Ruano v. Barr*, 922 F.3d 346, 353 (7th Cir. 2019) ("We and other circuits have recognized that membership in a nuclear family can satisfy the social group requirement.") (citations omitted). The feared persecution "must be attributable to the government or to a nongovernmental entity that the government is unable or unwilling to control." *Cruz-Martinez v. Sessions*, 885 F.3d 460, 463 (7th Cir. 2018) (cleaned up). Actions of private citizens—such as Tacho—do not suffice "unless the government is complicit in those acts or is unable or unwilling to take steps to prevent them." *Halim v. Holder*, 755 F.3d 506, 512 (7th Cir. 2014) (quotation omitted); see also *Hor v. Gonzales*, 421 F.3d 497, 502 (7th Cir. 2005) (granting a petition for review because the Algerian government was unable

to protect the petitioner); *Rosales Justo v. Sessions*, 895 F.3d 154, 163 (1st Cir. 2018) ("[U]nwillingness and inability are distinct issues, and [] an applicant may be able to prove inability without proving unwillingness where the government's willing efforts to protect its citizens fall short.").

Ortega argues that the IJ's decision, as affirmed by the BIA, was not supported by substantial evidence because it failed to consider current conditions in Mexico and changes to his personal circumstances. Regarding current country conditions, Ortega claims that the BIA should have reviewed the IJ's decision de novo because the IJ ignored this evidence and thus committed legal error. But, as the BIA correctly found, the IJ's decision explicitly referred to country conditions evidence, including the high rate of crime that goes unresolved and unpunished and the widespread corruption within the Mexican government. The BIA therefore properly reviewed the IJ's determination on country conditions evidence for clear error, 8 C.F.R. § 1003.1(d)(3)(i), and the BIA's decision is supported by substantial evidence. Importantly, "generalized conditions affecting large segments of a population do not, by themselves, prove that [Ortega] faces persecution" and thus have "no significance" unless he can establish that he "is likely to be singled out for persecution." *Raghunathan v. Holder*, 604 F.3d 371, 378 (7th Cir. 2010) (citation omitted).

Turning to Ortega's personal circumstances, he argues that the Mexican government is less likely to protect him because he is no longer employed by a Mexican government entity and has not been since 2002. This is mere speculation, and we are allowed to rely on the government's past actions when assessing the risk of future persecution. See, e.g., *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 724 (7th Cir. 2005) (finding that

substantial evidence supported the IJ's "conclusion that petitioners' fear of future persecution was not objectively reasonable" where the police previously "responded immediately" to death threats). There is substantial evidence that Mexican authorities were willing to protect Ortega in the past. An escort was sent to investigate when Ortega was shot in the leg; Ortega was allowed to transfer fire stations twice after he received threatening messages; the police arrived the first time Ortega was followed by a vehicle (though he did not proceed with a police report); and when Ortega was again followed the next day, detectives helped him right away and recommended that he file a report with the prosecutor's office. There is also substantial evidence that Mexican authorities are able to protect Ortega and his family. Officials previously charged and sentenced the individuals who murdered Ortega's father. Further, Tacho is currently in prison, which undermines Ortega's concern that the Mexican government is unable to control him.

Under our highly deferential standard of review, we find that substantial evidence supports the IJ's decision, as affirmed by the BIA, that Ortega failed to establish that Mexico would be unable or unwilling to protect him. Accordingly, we deny the petition for review.

DENIED