In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1901

SANAULLAH KHAN MOHAMMED,

*Petitioner*,

*v.*

TODD W. BLANCHE,[*]
Acting Attorney General of the United States,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A201-643-458

ARGUED FEBRUARY 18, 2026 — DECIDED MAY 5, 2026

Before SCUDDER, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Sanaullah Khan Mohammed entered the United States on a visitor visa in 2016. He overstayed and did not apply for asylum until a year and a half after the

---

[*] We have substituted Todd W. Blanche, the current Acting Attorney General of the United States. See Fed. R. App. P. 43(c)(2).

deadline. An immigration judge found his request for asylum untimely, rejected his other requests for relief, and ordered his removal. After the Board of Immigration Appeals dismissed his appeal, Mohammed petitioned for our review. His petition does not address our jurisdiction to review the immigration judge's dismissal of his asylum claim as untimely—a question that, in light of recent Supreme Court precedent, has divided other circuits and which we leave for another day. Absent adversarial presentation of this issue, we rely on our own precedent and hold that we lack jurisdiction to review the timeliness of Mohammed's request for asylum. We otherwise deny his petition, as we see no error in the denial of his request to withhold removal.

# I

## A

The administrative record supplies the operative facts.

Mohammed comes from a Muslim family in India. The family ran a slaughterhouse business that would buy cows, butcher them, and pack and sell the meat. Tension arose with Hindus in the area who both considered cows sacred and claimed affiliation with the Bharatiya Janata Party, a dominant political party in India. After Mohammed began running the slaughterhouse in 2014, he witnessed increased attempts to interfere with the business.

By Mohammed's telling, the most serious incident occurred around May 2016. It was then that a group confronted him and his mother, threw rocks at him, and then beat him, all the while admonishing them to shutter the slaughterhouse. When Mohammed yelled for help, local police responded and

dispersed everyone. The attack left Mohammed with minor injuries that required little medical attention.

About a month later, on June 26, 2016, Mohammed entered the United States on a visitor visa. He remained beyond the expiration date of December 25, 2016. He did not apply for asylum until January 28, 2019.

B

Having received Mohammed's asylum application well beyond the one-year deadline of June 26, 2017, the U.S. Citizenship and Immigration Services denied it. From there Mohammed received a notice to appear on a charge of removability. In time an immigration judge held a hearing and considered Mohammed's claims for asylum, withholding of removal, and relief under the Convention Against Torture. Mohammed testified as the sole witness at the hearing.

Finding no extraordinary circumstances justifying an exception to the one-year deadline to apply for asylum, the immigration judge denied Mohammed's application as untimely. See 8 U.S.C. § 1158(a)(2)(D). The immigration judge also denied his request to withhold removal, finding that Mohammed showed neither past persecution nor a meaningful risk of future persecution, and denied him relief under the Convention Against Torture. The Board of Immigration Appeals agreed and dismissed Mohammed's appeal.

Before us is Mohammed's petition for review.

II

A

The Attorney General urges us to conclude that we lack jurisdiction to review the dismissal of Mohammed's asylum

application as untimely, relying in part on our decision in *Khan v. Filip*, 554 F.3d 681 (7th Cir. 2009). There we concluded that although 8 U.S.C. § 1252(a)(2)(D) permitted judicial review of "constitutional claims" or "questions of law," "factual determinations (such as whether the asylum application was filed within the one-year deadline) and discretionary decisions (such as whether the alien has demonstrated 'extraordinary circumstances' justifying the delay) do not" qualify for review. *Id.* at 687. Our holding in *Khan* controls, leaving us without jurisdiction to consider Mohammed's asylum claim.

To be sure, the Supreme Court's recent decisions in *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020), and *Wilkinson v. Garland*, 601 U.S. 209 (2024), have spawned a split among the circuits over whether a circuit court has the authority to review an immigration judge's determination that an asylum application is untimely. No doubt these decisions will require us to revisit *Khan*, but this case does not provide that occasion.

Mohammed's opening brief does not address the question. And, in response to the government's contention that we lack jurisdiction, he failed to file a reply brief—supplying no adversarial presentation on the question. In these circumstances, the most prudent course is to adhere to *Khan*.

Our recent decision in *Gulomjonov v. Bondi*, 131 F.4th 601 (7th Cir. 2025), is not to the contrary. Indeed, the course we chart here aligns with the one we traveled there. Like Mohammed, Gayratjon Gulomjonov challenged an immigration judge's denial of an asylum claim as untimely. See *id.* at 610–11. He argued that the immigration judge committed error in determining the date on which the one-year limitation for seeking asylum began to run. See *id*. We saw the contention "as a factual argument, not a legal one" and thereby

concluded that it fell "outside our limited jurisdiction." *Id.* at 611. In doing so, we relied on *Khan* as well as our 2014 decision in *Yang v. Holder*, 760 F.3d 660, 665 (7th Cir. 2014). See *id.*

We then made a broader observation. To the extent Gulomjonov somehow sought to rely on the Supreme Court's recent decision in *Guerrero-Lasprilla* as part of urging us to see his challenge to the immigration judge's decision as one involving a mixed question of law and fact, we declined the invitation. See *id.* Indeed, "Gulomjonov neither cited *Guerrero-Lasprilla* nor made any effort to explain how the immigration judge's finding about" when the one-year limitations period for the asylum claim began to run "might be characterized as a mixed question of law and fact." *Id.* Even more, we emphasized that "[a]lthough we have an independent obligation to address potential barriers to our jurisdiction, we need not bend over backwards to construct alternate theories to support jurisdiction when the party asserting it hasn't done so." *Id.* (cleaned up).

Put most simply, *Gulomjonov* did not purport to answer a broader jurisdictional question or to unsettle or recognize *Khan* as overruled by *Guerrero-Lasprilla.* Our jurisdictional analysis in *Gulomjonov* spanned just over one page and, if anything, reinforced that *Khan* remains the law of the circuit. And it is that legal reality—mindful that Mohammed altogether failed to engage with the government's jurisdictional challenge—that precludes our review of the immigration judge's dismissal of his asylum application as untimely.

B

The jurisdictional question we leave unresolved today is one that warrants careful consideration at a later date.

Knowing the issue will return, we offer a few observations to benefit our future consideration.

The Immigration and Nationality Act gives non-citizens one year from arrival to file for asylum. See 8 U.S.C. § 1158(a)(2)(B). The statute contains a limited exception, however: "[a]n application for asylum of an alien may be considered, notwithstanding [a late or successive application], if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the" one-year limit. *Id.* § 1158(a)(2)(D).

The INA also speaks to judicial review and related questions of jurisdiction. Congress provided that "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding, among other things, whether an untimely application warrants review. *Id.* § 1158(a)(3). But exceptions once again add complexity to the analysis. In § 1252(a)(2)(D), a provision that applies to federal court review of asylum applications, Congress provided that no limits it placed on judicial review "shall be construed as precluding review of constitutional claims or questions of law" brought by a petitioner. *Id.* § 1252(a)(2)(D). Put in positive terms, Congress authorized judicial review of legal questions, including claims under the Constitution.

The question then is whether an immigration judge's determination that a non-citizen seeking asylum has failed to present an extraordinary circumstance excusing an untimely application is reviewable in a federal circuit court. Or framed with stricter legal precision, the question asks whether the judicial review being sought is that of "constitutional claims or

questions of law" as Congress used those terms in § 1252(a)(2)(D).

The Supreme Court provided guidance for what counts as a "question of law" within the meaning of § 1252(a)(2)(D) in *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020) and *Wilkinson v. Garland*, 601 U.S. 209 (2024). In *Guerrero-Lasprilla*, the Court explained that a question of law "includes the application of a legal standard to undisputed or established facts." 589 U.S. at 225. And circuit courts can review a petitioner's claim that his removal proceeding should be reopened under equitable tolling principles. See *id.* at 227.

A few years later, in *Wilkinson*, the Court treated as a question of law, and thus reviewable by a circuit court under § 1252(a)(2)(D), a petitioner's claim that removal would result in "exceptional and extremely unusual hardship" to his family member, who was a citizen. 601 U.S. at 216–17. In reaching this conclusion, the Court considered that Congress had removed the discretionary language "in the opinion of the Attorney General" from the hardship determination statute at issue. *Id.* at 224. And the Court acknowledged that Congress left similar discretionary language in various other sections of the INA. See *id.* Recall here that Mohammed sought to excuse his untimely asylum application by invoking § 1158(a)(2)(D), which required him to show "to the satisfaction of the Attorney General" either changed circumstances materially affecting his eligibility for asylum or extraordinary circumstances relating to his missing the one-year filing deadline.

In evaluating the reach of § 1158(a)(2)(D) after *Guerrero-Lasprilla* and *Wilkinson*, other circuits have divided. At least four (and maybe five) circuits have concluded that they lack jurisdiction to review the Attorney General's decision

whether to consider an untimely asylum application. See *Zapet-Alvarado v. Bondi*, 152 F.4th 329, 334–36 (1st Cir. 2025) (concluding that the court lacked jurisdiction to review an agency's decision under § 1158(a)(2)(D) in light of *Guerrero-Lasprilla* and *Wilkinson* because of the discretionary language in the statute), *petition for cert. filed* (U.S. Mar. 11, 2026) (No. 25-1081); *Real v. Att'y Gen.*, 147 F.4th 361, 366–68 (3d Cir. 2025) (applying the same reasoning); *Osabas-Rivera v. Bondi*, 161 F.4th 446, 452–54 (6th Cir. 2025) (same), *petition for cert. filed* (U.S. Mar. 4, 2026) (No. 25-1080); *A.P.A. v. U.S. Att'y Gen.*, 104 F.4th 230, 236–41 (11th Cir. 2024) (same); see also *Pacheco-Moran v. Garland*, 70 F.4th 431, 438 (8th Cir. 2023) (considering only *Guerrero-Lasprilla* and "refus[ing] to adopt a reading of § 1252(a)(2)(D) that vitiates § 1158(a)(3)" (cleaned up)).

Only the Ninth Circuit has reached the opposite conclusion. See *Ruiz v. Bondi*, 163 F.4th 586, 597–99 (9th Cir. 2025) (considering *Wilkinson* and concluding that the court had jurisdiction to review, albeit with deference, the Attorney General's determination under § 1158(a)(2)(D) as a mixed question of law and fact).

Identifying and settling the scope of § 1158(a)(3)'s jurisdictional bar in the wake of recent Supreme Court precedent will be consequential for non-citizens seeking asylum and the Attorney General. For today, however, we adhere to *Khan* and conclude that we lack jurisdiction over Mohammed's challenge to the immigration judge's dismissal of his asylum application as untimely.

**III**

Mohammed also challenges the denial of his request for the withholding of removal. All agree we have jurisdiction to consider this claim.

When the Board of Immigration Appeals adopts and affirms an immigration judge's decision and provides its own analysis, we review both. See *Urzua Ortega v. Garland*, 97 F.4th 496, 499 (7th Cir. 2024). And when evaluating an agency's persecution determination, we "review the entirety of the agency's conclusions—both the underlying factual findings and the application of the INA to those findings—for substantial evidence." See *Urias-Orellana v. Bondi*, 146 S. Ct. 845, 851 (2026).

Mohammed's request for withholding of removal falls short on the merits. A non-citizen may not be removed to a country if his "life or freedom would be threatened in that country because of the [petitioner's] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). A finding of past persecution on a protected basis in a country gives rise to a rebuttable presumption that the non-citizen's "life or freedom would be threatened" when returned. 8 C.F.R. § 1208.16(b)(1). Absent such past persecution a petitioner must show that, upon return to his country of origin, it is "more likely than not that he or she would be persecuted" because of a protected basis. *Id.* § 1208.16(b)(2).

Substantial evidence supports the agency's determination that Mohammed did not establish past persecution or a likelihood of future persecution. Persecution involves "the use of *significant* physical force against a person's body" or some

comparable nonphysical harm. *Stanojkova v. Holder*, 645 F.3d 943, 948 (7th Cir. 2011). The actions of private citizens generally "do not suffice 'unless the government is complicit in those acts or is unable or unwilling to take steps to prevent them.'" *Urzua Ortega*, 97 F.4th at 499 (quoting *Halim v. Holder*, 755 F.3d 506, 512 (7th Cir. 2014)).

The bumps, scrapes, and bruises Mohammed received in the May 2016 incident do not compel the conclusion that he suffered persecution. See *Zhu v. Gonzales*, 465 F.3d 316, 318, 320 (7th Cir. 2006) (finding no persecution based on a single incident that involved the use of a brick and resulted in stitches). Nor has Mohammed demonstrated that the Indian government allowed the violence. Indeed, local police stopped the attack.

Moving to future persecution, Mohammed's challenges are even weaker because his family's local slaughterhouse business that provoked the past violence is no longer in operation. Even more, Mohammed could live somewhere else within the very large country of India. See *Martinez-Martinez v. Bondi*, 147 F.4th 831, 837 (7th Cir. 2025).

Mohammed presents no basis to disturb the agency's decision.

## IV

The immigration judge and Board also rejected Mohammed's request for relief under the Convention Against Torture. During oral argument, Mohammed's counsel clarified that his petition for review does not challenge that ruling.

For these reasons, Mohammed's petition for review is DISMISSED in part and DENIED in part.